361 So.2d 1332 (1978)
Sweeney BENOIT, as personal representative of William Benoit, Jr., Plaintiff-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANY, Stand-By Crews, Inc., and Deepwater Boats, Inc., Defendants-Appellants.
No. 5988.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1978.
Rehearing Denied September 25, 1978.
*1333 Camp, Carmouche, Palmer, Barsh & Hunter, Karl E. Boellert, Lake Charles, for defendants-appellants.
Ronald J. Bertrand, Lake Charles, for appellee.
Before DOMENGEAUX, GUIDRY, and CUTRER, JJ.
DOMENGEAUX, Judge.
This matter is before us on remand from judgment of the Supreme Court, 355 So.2d 892 (La.1978) #60,336 on the docket of that Court, rendered March 6, 1978.
Involved is recovery for the maritime wrongful death of William Benoit, Jr., on the part of his three minor children.[1]
Plaintiff-appellee, Sweeney Benoit, brings this action as personal representative of decedent. He alleges that Benoit drowned on March 8, 1973, in the Gulf of Mexico while a member of the crew of the "Carol Ann," a vessel owned by Deepwater Boats, Inc., one of the named defendants, and operated and manned by Stand-By Crews, Inc., another of the named defendants. The last named defendant, Fireman's Fund Insurance Company, is the insurer of both Deepwater Boats and Stand-By Crews. The vessel was used for stand-by purposes in connection with offshore drilling activities.
Plaintiff seeks recovery under the Jones Act, 46 U.S.C.A. Sec. 688; the Death on High Seas Act, 46 U.S.C.A. Sec. 761; and the General Maritime Law, alleging unseaworthiness and negligence.[2]
The first time this case was before us, we resolved an issue involving the validity of a settlement on the part of the minor children. We found that the settlement was valid and reversed the trial judge's ruling.[3] On writ of certiorari, the Louisiana Supreme Court reversed our judgment and remanded the case back to us for a consideration of issues not reached in our previous opinion.
In a supplemental brief, filed after remand to this Court, defendants have outlined the issues to be considered at this stage. They are:

*1334 (1) The absence of any proof that William Benoit, Jr. drowned or otherwise perished as a result of the unseaworthiness of the vessel, or as a result of the negligence of the owner or operator of the vessel;
(2) The excessiveness of the award to the minor children;
(3) The refusal of the trial court to submit special interrogatories to the jury, and the lack of balance or precision as to the form actually submitted to the jury; and
(4) The prejudicial and improper conduct of plaintiff's counsel in front of the jury.
We will discuss these issues in order.

I. UNSEAWORTHINESS AND NEGLIGENCE
Decedent disappeared during the early morning hours of March 8, 1973, while the "Carol Ann" was tied to a Mobil Oil Company offshore platform in the Gulf of Mexico. At the time of the disappearance, the "Carol Ann" was being used as a stand-by boat in the event that it would be needed for the oil rig. The vessel was manned by only two crew members, the Captain, Albert Trobl, and decedent.
Benoit was last seen by Captain Trobl between 1:00 and 3:30 A.M. Although the two had retired to their quarters at approximately 10:00 P.M., for some reason, Captain Trobl awoke during the early morning and found Benoit in the galley smoking a cigarette. After a brief conversation, Trobl returned to his quarters. When Trobl arose at approximately 6:10 A.M., he could not find Benoit. A check of Benoit's quarters revealed that his clothing and personal belongings were still there. The entire vessel was searched. Assistance was obtained from Mobil Oil Company personnel on the rig, as well as from the United States Coast Guard. A search was conducted throughout the day; however, neither Benoit nor his body was ever found.
Defendants contend that the evidence presented in this case was insufficient to prove drowning and insufficient to prove unseaworthiness or negligence.
At the outset, we note that the scope of review of jury verdicts in maritime cases like this is the same as that of the Federal Courts. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971). As we stated in Hocut v. Insurance Company of North America, 254 So.2d 108, 111 (La.App.3rd Cir. 1971), writ denied, 260 La. 411, 256 So.2d 292 (1972):
". . . . In Gallick v. Baltimore and Ohio Railroad Company, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618, the Supreme Court of the United States in quoting from Tennant v. Peoria & P.U.R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 defined those limits as follows:
`"It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235; Tiller v. Atlantic Coast Line R. Co., supra, 318 U.S. [54] 68, 63 S.Ct. [444] 451 [87 L.Ed. 610], 143 A.L.R. 967; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel *1335 that other results are more reasonable." 321 U.S., at 35, 64 S.Ct. at 412.'
In Trahan v. Gulf Crews, Inc. [246 So.2d 280 (La.App.3rd Cir. 1971)], we quoted from Rogers v. Missouri Pacific Railway Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, thusly:
'It is no answer to say the jury's verdict involved speculation or conjecture * * * Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear * * * the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' (Emphasis added) Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916."
Looking to the record in this case, we find that there is no "complete absence of probative facts" which would result in reversible error.
Although it is true that Benoit's body was never found, even after a day long search, we think that the jury could have drawn the inference that Benoit, in fact, had drowned. Caption Trobl testified at trial that the rig to which the Carol Ann was tied was 78 miles offshore.[4] He also stated that the depth of the water in this area was about 300 feet and that the distance between the vessel and the rig was approximately 75 feet. It was also established that the "Carol Ann" had no lifeboat and that the vessel rarely drifted close to the rig.
The Captain also said that the last time he saw Benoit, Benoit was clad only in his undershorts and that a search of Benoit's quarters revealed that no additional clothing was missing. We think that these factors give support to the inference that William Benoit, Jr. drowned.
We also find sufficient evidence to support the jury's finding of negligence or unseaworthiness. It was established at trial that Benoit had not been a seaman prior to his employment with Stand-By Crews, although he had been a fisherman. He also worked with rice farmers and cattlemen. He was required by neither the Captain nor Stand-By Crews to wear a life jacket, and he was not given any specialized training or instructions relative to safety procedures or precautions when he entered the ship's service.
It was also established that the vessel only had two crew members assigned to her and did not have a watch to hear the call of seamen who might fall overboard. In addition, the Captain had no certification to operate the vessel.
Furthermore, evidence indicated that although the ship had a railing surrounding it, the railing was only approximately three feet high in the bow and two feet high in the stern.
We think that several constructions could have been placed on these raw facts by the jury in order to come up with a theory whereby the drowning of Benoit would have resulted from negligence or unseaworthiness. For example, the jury could have concluded that the employer was negligent in not requiring Benoit, an inexperienced seaman, to wear a life jacket.[5] The *1336 jury could have concluded that the railing on the vessel was too low and that, had the railing been higher, Benoit might not have drowned. The jury could have found that the vessel was undermanned, and that, had a watch been posted, Benoit would have been rescued and would not have perished. There, perhaps, are many other constructions which could lead to a finding of liability. It is not our function to speculate as to which theory the jury chose. Our function is to examine the record in order to ascertain whether there is some basis of probative facts to support the conclusion reached.
We think there was such a basis and, accordingly, affirm the jury's finding of liability.

II. THE EXCESSIVENESS OF THE AWARDS TO THE CHILDREN
The jury awarded Sherri Benoit $50,000.00; Scott James Benoit $37,500.00; and Donna Benoit $25,000.00 for their loss of support. No award was made by the jury for loss of society. In a motion for a new trial, defendants alleged, inter alia, that the verdict was not supported by the evidence. In the alternative, defendants also moved for remittitur of the verdict. Both motions were denied by the trial court.
In Trahan v. Gulf Crews, Inc., supra, the Louisiana Supreme Court discussed the scope of appellate review of maritime jury awards. At page 70 of its opinion, the following is stated:
"State appellate review of jury awards under maritime law and the Jones Act is, as in the federal courts, `extremely limited.' They must stand unless the appellate courts find there is no law and no evidence to sustain them, rendering them, as some courts have put it, so excessive as to be obviously punitive, motivated by prejudice, passion, partiality, or corruption. This is particularly true where the trial judge, finding the jury award is not excessive, has denied a new trial and/or remittitur. Naylor v. Isthmian S.S. Co., 2 Cir., 187 F.2d 538; Jenkins v. Associated Transport, Inc., 6 Cir., 330 F.2d 706; Sanford Bros. Boats, Inc. v. Vidrine, 5 Cir., 412 F.2d 958; Volume 2 of Norris's Treatise on `The Law of Seamen' 429 (3rd Edition, 1970); and the authorities therein cited."
At the time of his death, Benoit was 34 years of age. Sherri, Scott, and Donna were ages 10, 11, and 13 years, respectively. Benoit had been married to Harriet Ann Benoit from August of 1958 until June of 1969, at which time he was divorced. The mother had custody of the children. Benoit had been ordered to pay alimony of $100.00 per month for the children; however, there is some question as to how many payments Benoit made.
Benoit's wages were fixed at $29.00 per day. He worked fourteen days on and fourteen days off.
Defendants contend that the children can only recover for loss of support. They maintain that the figure of $100.00 per month should be used in determining the dollar value of loss of support. Since the minors were ages 10, 11, and 13 years at the time of Benoit's death and since there was no evidence of loss beyond the point at which each child would reach the age of majority, defendants contend that the children are entitled to support for a combined total of fifteen years, or a dollar total of $18,000.00. They further argue that when this sum is discounted at the rate of six percent over five years, the maximum figure of recovery should be $15,517.67. We disagree.
*1337 The United States Supreme Court's decisions in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), and Mobil Oil Corp. v. Higgin___ botham, ___ U.S. ___, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) are applicable on this issue. In Gaudet, the Supreme Court held that awards for maritime wrongful deaths under the General Maritime Law could include compensation for loss of support and services, funeral expenses, and loss of society. In Higginbotham, the Supreme Court clarified Gaudet and held that recovery for loss of society could not be had if the death occurred outside of coastal waters.
We are not concerned with loss of society in this case because the jury specifically denied recovery for this item. However, Higginbotham left unchanged the rule that recovery may be had if the death occurred outside of coastal waters, for loss of support and services. In Gaudet, the Court said that "services" would include the nurture, training, education, and guidance that a child would have received had the parent not been wrongfully killed.
We feel that the jury must have considered the loss of these "services" in making their awards. We think it evident that fixing dollar values for such items as nurture, training, education, and guidance is not subject to mathematical precision. There is no litmus paper test by which we can compare the dollar amount awarded by the jury to a predetermined scale setting forth the monetary value of a parent's supplying of these items. We also note that the jury was careful in making their awards in proportion to the ages of the children. It is apparent that the jury did not indiscriminately award large sums of money. Considering the fact that the trial judge had an opportunity to review the award, the trial judge's denial of a new trial and remittitur, and considering our review of the record in this case, we do not feel that the award made by the jury was excessive. Accordingly, it is affirmed.

III. JURY INTERROGATORIES
Defendants raise a bifurcated argument with regard to the third issue. They contend that: (1) The trial judge was in error by failing to submit their special interrogatories; and (2) The jury verdict lacked precision in that, although there are three defendants, the verdict was erroneously rendered against "the defendant."
We passed upon the question of special interrogatories in maritime wrongful death cases in Hocut v. Insurance Company of North America, supra, where it was stated at page 111:
"The decision of whether or not a case will be submitted to the jury on special interrogatories is one resting exclusively within the discretion of the trial judge and there is no mandatory requirement that a case be thus submitted because a party requests it. La. Code of Civil Procedure, Articles 1811-1812; Mulkey v. Aetna Casualty and Surety Company, La. App., 210 So.2d 897."
We adhere to this view and, therefore, reject defendants' contention in this regard.
With regard to the jury's verdict being rendered against "the defendant," we feel that even though this may be an error, it is not reversible in this case. Both Stand-By Crews, Inc. and Deepwater Boats, Inc. were owned by one person, Joseph Braxton Blake, Jr. Both were insured by the same insurer, Fireman's Fund Insurance Company. Plaintiff has pointed out on appeal that from the beginning of the suit, all the defendants were considered as one. Although defendants argue that neither Deepwater Boats nor Stand-By Crews has any idea of whether one may be entitled to indemnity or contribution from the other, we note that no third party demands have been filed. Even if indemnity or contribution was sought, we fail to see the utility of such action, since both Deepwater Boats and Stand-By Crews are owned by the same person and insured by the same insurer. We, therefore, reject defendants' contention in this regard.

IV. THE PREJUDICIAL AND IMPROPER CONDUCT OF PLAINTIFF'S COUNSEL
Defendants contend that several overly prejudicial statements, which may have had *1338 an undue influence on the jury in reaching a verdict, were made by plaintiff's counsel during his closing arguments. We reject this contention for several reasons. First, we note that the transcript in this case does not contain the closing arguments of either counsel. Defendants attempted to place a transcript of the closing argument of plaintiff's counsel by filing a pleading before this Court captioned "MOTION FOR LEAVE TO FILE EXTRACT OF PROCEEDINGS." This was to no avail. If defendants wanted to be certain that the closing arguments would be included in the record, they should have followed the procedure set forth in Article 2128 of the Louisiana Code of Civil Procedure.[6]
Second, we note that no objections were made to the closing argument during the trial. Defense counsel has included a copy of the transcription of the argument in his brief and devoted significant portions of his original and supplemental appellate briefs to this issue. The transcription, the briefs, and the appellate record all indicate that defense counsel entered no objection at trial. The failure of defense counsel to object to statements alleged to be prejudicial constitutes a waiver of his rights to complain of them on appeal. Temple v. Liberty Mutual Insurance Company, 330 So.2d 891 (La.1976); Luquette v. Bouillion, 184 So.2d 766 (La.App.3rd Cir. 1966).
Third, if the statements made by plaintiff's counsel were prejudicial, we believe that the trial judge took corrective measures to counteract any prejudicial effect of statements made during closing argument. The trial judge clearly stated in his instructions to the jury that the arguments of counsel were not evidence. He also stated that sympathy should not influence the verdict, either on the issue of liability or on the issue of quantum. The instructions also included a warning to the jury that they should not be influenced by the fact that one of the defendants in the suit was an insurance company, as well as the statement that all parties are entitled to equal justice, whether they are rich or poor, or individuals or corporations. Clearly, these would be sufficient to cure the alleged defects in the closing argument. Temple v. Liberty Mutual Insurance Company, supra.
Fourth, we note that in the motion for a new trial requested by defendants, one of the grounds alleged was that the verdict was influenced by prejudicial arguments made by counsel for plaintiff. We think the language at page 894 in the Supreme Court's opinion of Temple v. Liberty Mutual Insurance Company, supra, is instructive:
"[C]ounsel has great latitude in argument before a jury, subject, however, to regulation and control by the court, whose duty it is to confine argument within proper bounds. The trial judge denied defendants' motion for a new trial, which alleged, inter alia, that the prejudicial argument of plaintiffs' counsel warranted the granting of a new trial. The trial judge is in a better position than an appellate court to determine possible prejudicial effects resulting from counsel's argument before a jury. Therefore, his finding that counsel for plaintiffs' argument was not so prejudicial as to warrant the granting of a new trial should be accorded much weight."
*1339 We think the same applies in this case.
In conclusion, therefore, we do not feel that the fourth issue is grounds for reversal.

V. MISCELLANEOUS MATTERS
During oral argument, defendants raised for the first time the issue of whether they should be entitled to a setoff for the amount of the "settlement" made on behalf of the children by their mother, the natural tutrix. This was the settlement that the Louisiana Supreme Court found to be of no force and effect in the present litigation because the mother was not the personal representative and, therefore, had no capacity to settle the claim. Since this issue was not raised or discussed in the briefs and defendants did not request this relief in their pleadings at the trial level, we will not review it in this appeal. Rule IX-A, Uniform RulesCourts of Appeal. Furthermore, we note that the mother is not even a party to these proceedings.
The final matter in this case deals with the award of interest on the judgment. The trial judge cast defendants for legal interest from the date of judicial demand. In the concluding remarks contained in their original and supplemental briefs, defendants maintain that interest should run from the date of the entry of the judgment. In maritime law, the time at which interest begins to run rests within the discretion of the trial court. Canova v. Travelers Insurance Company, 406 F.2d 410 (C.A. 5th Cir. 1969), writ denied 396 U.S. 832, 90 S.Ct. 88, 24 L.Ed.2d 84 (1969). We find no abuse of discretion.
For the above reasons the judgment of the District Court, as it relates to the award in favor of the minor children, is affirmed. Costs on appeal are assessed against the defendants-appellants.
AFFIRMED.
NOTES
[1] Originally, the mother of Benoit was involved to enforce her claim, but this was settled during appeal.
[2] Suit was filed prior to Mobil Oil Corporation v. Higginbotham, ___ U.S.___, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).
[3] 347 So.2d 269 (La.App.3rd Cir. 1977).
[4] There was other testimony, however, which indicated that the oil rig may have been somewhat closer to the shoreline.
[5] On this point, we think it worthy to note that in Davis v. ParkhillGoodloe Company, 302 F.2d 489 (C.A. 5th Cir. 1962), the Fifth Circuit found a shipowner liable for the wrongful death by drowning of an inexperienced seaman, who had not been instructed to wear a life preserver. The Court stated in 302 F.2d at 494:

"Whatever a shipowner might be permitted to do with respect to seasoned hands familiar with the peculiar hazards of the sea, it is plain that it could not absolve itself of the pervading obligation to furnish a seaworthy vessel and exercise a prudent care for seamen by leaving this important decisionto wear or not wear a life vest?up to this inexperienced, untrained farm boy who had not yet begun to get his sea legs. This is but the application of the familiar principle of salt water, amphibious and land-locked jurisprudence that there is a duty to warn in an effective way of dangers not reasonably known, Pioneer Steamship Co. v. Hill, 6 Cir., 1955, 227 F.2d 262, 264, 1955 A.M.C. 1617, and a duty to take effective action in the light of the particular conditionhere inexperience and ignorance of seagoing perilsof the particular seaman, Justillian v. Versaggi, S.D. Tex. 1954, 169 F.Supp. 71; Reck v. Pacific-Atlantic Steamship Co., 2 Cir., 1950, 180 F.2d 866, 1950 A.M.C. 744; McDonough v. Buckeye S.S. Co., N.D.Ohio, 1951, 103 F.Supp. 473, affirmed, 6 Cir., 1952, 200 F.2d 558; Tetterton v. Artie Tankers, Inc., E.D.Pa., 1953, 116 F.Supp. 429. This was a basic fault on the part of the shipowner."
[6] Article 2128 provides:

"The form and content of the record on appeal shall be in accordance with the rules of the appellate court, except as provided in the constitution. However, within three days, exclusive of holidays, after taking the appeal the appellant may designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal. Within five days, exclusive of holidays, after service of a copy of this designation on the other party, that party may also designate in a writing filed with the trial court such other portions of the record as he considers necessary. In such cases the clerk shall prepare the record on appeal as so directed, but a party or the trial court may cause to be filed thereafter any omitted portion of the record as a supplemental record. When no designation is made, the record shall be a transcript of all the proceedings as well as all documents filed in the trial court."