CHIASSON, Judge.
This is a claim for damages filed by plaintiffs-appellants, Frank and Alice Lister, against defendants-appellees, Berard Boats, Inc., the owner of the M/V Kathleen; Texaco, Inc., the charterer of the vessel at the time of the accident; and their insurers, St. Paul Fire & Marine Insurance Company, American Motorists Insurance Company and Commonwealth Insurance Company, for an accident occurring on navigable waters as a result of the alleged negligent operation of the crewboat Kathleen.
Appellants allege that Mrs. Alice Lister sustained injuries when she fell in their fifteen foot fishing boat; that the fall and injuries were caused by the failure of the Kathleen to slow down when it passed within twenty feet of their fishing boat; and *727 that the resulting wake generated by the Kathleen caused their fishing boat to be tossed about, threw Alice to the deck of the boat and severely injured her.
After trial the jury returned a special verdict in favor of Berard Boats, Inc. and its insurer finding that the Kathleen was not involved in the accident.
The trial judge found in favor of Texaco, Inc. and its insurers holding that Texaco was not owner pro hac vice of the Kathleen.
On appeal appellants contend that the jury verdict is manifestly erroneous and not substantiated by a reasonable evaluation of the credibility of the evidence; that, even under Federal standards, the verdict is clearly erroneous because the jury committed error in weighing the credibility of the witnesses and the preponderance of the evidence; and that the trial court erred in applying the limited scope of review of fact as set forth in Benoit v. Fireman’s Fund Ins. Co., 361 So.2d 1332 (La.App. 3d Cir. 1978) in deciding appellants’ motion for a new trial.
In reasons for judgment on the motion for a new trial, the trial judge, Honorable Robert E. Johnson, thoroughly, exhaustively and in a most capable and accurate manner reviewed the conflicting evidence before the jury and correctly ruled as to the sufficiency of the evidence to justify the jury’s verdict. We approvingly quote therefrom and adopt as our findings the following:
“The testimony of one of the plaintiffs, Frank Lister, and that of his nephew stated that the ‘Kathleen’ was the boat that caused the wave-wash that resulted in the damages. The evidence shows that on this particular date, Texaco had two boats working, viz., the ‘Kathleen,’ and a smaller crew boat. Only the ‘Kathleen’ was owned by Berard Boats. The Texaco foreman who had charge of the boats is uncertain whether it was the Berard crew boat or the other smaller crew boat which was doing the work at around four o’clock that afternoon. The Texaco foreman’s best recollection is that it was the larger Berard boat. He was not at all sure, however. The captain of the Ber-ard boat, Elward Bourque, testified that he had left at about 12:00 or 1:00 PM, that day. He is unsure that he left the area; but, he recalls, according to his testimony, that he had quit operating boats around 12:00 or 1:00 PM. It was within the province of the jury to believe Bourque, if they chose, or to believe the plaintiff and his nephew if they chose. “Other evidence which the jury had before it is the evidence of the plaintiff, Frankie Lister. His testimony was that the ski boat they were in was no further away from the east bank of the Atchafa-laya, that is, the bank abutting Morgan City, than twenty-five feet from that bank. The testimony of the various witnesses who testified is that the Berwick bank of the Atchafalaya, that is, the west bank, is from one-half to three-quarters of a mile from the Morgan City side. This point, apparently, was of considerable importance to the jury. They came back into the courtroom and requested that Frank Lister’s testimony as to the distance his boat was from the east or Morgan City bank be repeated to them after they had been deliberating an hour or so already. By stipulation of counsel a passage from Lister’s deposition was read to the jury. In this passage, Lister stated that his small boat was within twenty-five feet of the Morgan City or east bank at the time the crew boat passed near the bass boat causing the wave action which resulted in Mrs. Lister being injured.
“The evidence shows that there is no logical, explainable reason why the Kathleen should have been that close to the east bank of the Atchafalaya. The river, as stated, is from one-half to three-quarters of a mile wide. The crew boat involved (whichever one it was) departed the west bank in Berwick to go south a few miles, and, thence, in a westerly direction to Texaco’s Bateman Lake Landing. There is no explainable reason, in the opinion of the Court, for the crewboat to have travelled all the way to the opposite or Morgan City side.
*728 “Plaintiffs’ testimony is that the damages occurred while the crewboat was headed south. If we accept plaintiffs’ testimony as to his proximity to the east or Morgan City bank, then for the crew boat involved to have rocked plaintiffs’ boat, it would have had to go almost directly east, from one-half to three-quarters of a mile, drive alongside plaintiffs’ boat in a southerly direction, and then turn westerly and travel, from one-half to three-quarters of a mile, to get back near the westerly bank. This is where the crew boats path would, and should have been, if it had left Berwick and had gone by the shortest route to Texaco’s Bateman Lake Landing.
“Plaintiff’s counsel argues that the presence of a number of boats docked at the west bank, in Berwick, might explain the big detour the vessel is alleged to have taken in order to go to the east bank, or Morgan City side, and cause the damage. It is suggested that defendants’ boat took this course in order to avoid having to slow down while passing moored boats on the Berwick side.
“Defendants countered with evidence that boats were docked only for an area of approximately 1,000 feet on the west bank in Berwick. They argued that it would take a very short period of time for the crew boat to clear the area where the boats were docked (and where the crew boat would have to drive slowly). After this, the crew boat could open up, if desired.
“Considering plaintiffs’ testimony that he was within twenty-five feet of the east or Morgan City bank, it is most difficult for the Court to believe that the crew boat involved (whether Kathleen or otherwise) would have left the west bank; crossed across the Atchafalaya; and caused the injuries complained of herein. “Defendants suggest, and the evidence does bear out, that the Listers, in their bass boat, were fishing during the morning at an area near which the Kathleen was operating. The Kathleen was delivering crew members and cargo from the docks in Berwick to the Texaco Bateman
Landing. The latter area, the evidence shows, was the areas where the Listers were fishing in their boat. This, the defendants suggest, is how the Listers got the name of the crewboat.
“In addition to the foregoing, the jury had before it the testimony of the foreman for Texaco who had charge of directing the chores that the two crewboats were to perform. The evidence also discloses that the area of the Atchafalaya River, between Berwick and Morgan City, is an area that carries a great deal of water borne traffic. The defendants maintain that the crewboats working for Texaco had no business being anywhere in the area except along the Berwick side (which was the western bank of the At-chafalaya) in carrying out their duties. To have deviated and gone across to the eastern bank, where plaintiffs said the accident occurred, would have been a waste of time and fuel. The plaintiffs suggest that the driver of the Kathleen did this in order to go faster in the river. A consideration of the distances that would have had to be travelled to get to the east bank, and to get back to the west bank, would indicate to the Court that a deviation such as this was not logical or probable. In addition to this, we have Bourque’s testimony that he had tied up the Kathleen at or about noon that day. Bourque was the only operator of the Kathleen. As stated previously, the accident allegedly occurred about 4:00 P.M.
“The Court feels, after listening to the evidence which was presented to the jury herein, that this jury was faced with a difficult decision. In the Court’s opinion, the question of whether or not the plaintiffs had proven that Mrs. Lister’s injuries were caused by the Kathleen was a close one. The Court cannot say that the judgment appears clearly contrary to the law and the evidence. The Court cannot say that the interests of justice require that a new trial be had herein. If the Court were to be permitted use of the yard stick, ‘clearly wrong’, as set forth by *729 the Supreme Court in, Arceneaux v. Domingue, 365 So.2d 1330, in evaluating the findings of the jury, this Court could not say that the jury’s findings were clearly wrong....”
We hold there are probative facts of record that reasonably support the jury’s finding and we find no manifest error.
No complaint is made by appellants in their brief as to the trial judge’s ruling that Texaco was not owner pro hac vice of the Kathleen. Further, our holding herein absolves all defendants of any liability and renders moot the correctness of said ruling.
As to our scope of review, the law seemingly requires application of the federal law. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971) and Benoit v. Fireman’s Fund Ins. Co., supra. We do not need to decide this issue extensively briefed by appellants because we find that the judgment of the trial court withstands both the state test and the federal test.
For these reasons the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.