313 So.2d 529

**Hilda M. CRISCO**

**v.**

**Melvin F. CRISCO.**

**SC 1081.**

Supreme Court of Alabama.

May 8, 1975.

Rehearing Denied June 19, 1975.

Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellant.

**170**

Edward L. Hopper, Huntsville, for appellee.

JONES, Justice.

The facts giving rise to the dispositive issue presented on this appeal are essentially undisputed. Melvin Crisco left his household and his wife, Hilda Crisco, in early November, 1971. On November 3, 1971, she filed a divorce complaint against him on the grounds of cruelty, which suit was personally served on the defendant November 10, 1971. Mr. Crisco returned home shortly thereafter where he stayed until December 17, 1972, when he again moved out. An interlocutory decree pro confesso was entered December 18, 1972, and a final divorce decree was rendered December 27, 1972. Two days thereafter Mr. Crisco was informed of the divorce decree and filed an application for rehearing January 9, 1973, which was originally set for hearing by order of the court February 7, 1973, and later continued to March 7, 1973, on which date the trial court lost jurisdiction of this cause.

Instead of prosecuting this direct attack on the final decree of divorce (the application for rehearing), Mr. Crisco filed a bill in the nature of a bill of review March 13, 1973. This new and independent action, collaterally attacking the final judgment of divorce, alleges in substance, as did his petition for rehearing, that he "was deceitfully and fraudulently led to believe by his wife that the divorce action commenced by her would not be prosecuted." His claim of fraud is further supported by the allegation that the parties had reconciled and resumed their marital relations to a point in time within two days of the granting of the interlocutory decree.

The bill also alleges that Mrs. Crisco practiced fraud on the court in that she failed, through her testimony in support of her bill for divorce, to inform the court that she and her husband lived together from December, 1971—shortly after the bill was filed—to December 17, 1972—shortly before the granting of the divorce decree. Such an allegation, which she was duty bound to make, says Mr. Crisco, would have constituted condonation of her alleged ground for divorce—physical cruelty—and thus she fraudulently failed to disclose facts which, if revealed, would have constituted a legal defense to the relief sought.

■ The question presented is: Where the challenged final decree of divorce was rendered, motion for a new trial filed and subsequently abandoned, and a bill in the nature of a bill of review was filed all prior to July 3, 1973 (the effective date of ARCP), and where the trial was held and the final decree granting relief thereunder was rendered in June, 1974, did the trial Court err in assuming jurisdiction of this latter cause and in holding the former judgment null and void? We hold that, although unaffected by ARCP, Rule 60(b), the trial Court did not err in granting the relief sought by complainant in the bill in the nature of a bill of review. We affirm.

■ As already shown, Mr. Crisco filed an application for rehearing, the only method permitted in equity at that time, on the ground of fraud, seven days after he learned that the divorce decree had been rendered. By so doing, he called the attention of the court to the alleged fraud and, thus, the allegation of fraud was apparent on the face of the record.

But he was suddenly faced with a dilemma caused by a quirk in our law. The suit for divorce was in equity. The record would show authentic service, testimony, a decree pro confesso and a final decree, all in proper form and regular on the face of the record. The trial Court had thirty days from December 27, 1972, to set the decree aside because the decree was in the breast of the Court for that period. When the Court took no action in the thirty days, Mr. Crisco had only the application for rehearing on which to rely.

If the Court denied his application for rehearing, Mr. Crisco would have been at his row's end. Had he been permitted to make a motion for a new trial, and he could have in a case on the law side, he could have appealed the denial of the motion and argued any ground of the motion appeal. · But his case was in equity, and Equity Rule 62 provided that "No appeal will lie from such order [granting or denying an application for rehearing] unless it modifies the decree." Since he had alleged the fraud in his application for rehearing, this charge was on the face of the record and he would be faced with a defense of res judicata in any further proceeding.

■ Not only was Mr. Crisco barred from appealing from an order denying the rehearing under Equity Rule 62, but this Court has held many times that such an order or decree is not subject to review on an assignment of error raising that point on appeal from the final decree. Madison County Board of Education v. Wigley, 288 Ala. 202, 259 So.2d 238; Appeal and Error, ⬥110, 870(6).

Mr. Crisco was, therefore, likely to be denied a right of appeal merely because the action was originally of an equitable nature and was tried in a court of equity which, at that time, had no such thing as a procedure for a new trial. It would be so until July 3, 1973 (the effective date of ARCP), when new trials could be sought whether in cases on the law side or in equitable matters. Rule 60(b).[1] We agree with appellant that Rule 60(b) is not applicable here.

Mr. Crisco abandoned his application for rehearing and filed his bill in the nature of a bill of review on March 13, 1973. The filing of this independent action was his only chance of having the alleged fraud reviewed on appeal if the trial Court did not set aside the decree for fraud.

■ This situation cannot arise again because new trials now apply in what were formerly equity cases, but we are not willing to hold that the abandonment of the application for rehearing in this case under these circumstances is a bar to the filing of a bill in the nature of a bill of review when the fraud was apparent on the face of the record. We now proceed to discuss that feature of the case.

■ A court is not without jurisdiction to exercise its inherent power to set aside and vacate at any time a judgment because of supervening invalidity based on fraud practiced on the court by a party in the procurement of the judgment apparent on the face of the record. See Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962); Holden v. Holden, 273 Ala. 85, 134 So.2d 775 (1961); McDonald v. Lyle, 270 Ala.

715, 121 So.2d 885 (1960); Vaughan v. Vaughan, 267 Ala. 117, 100 So.2d 1 (1958); Wheeler v. Bullington, 264 Ala. 264, 87 So.2d 27 (1956); Capps v. Norden, 261 Ala. 676, 75 So.2d 915 (1954); Robinson Co. v. Beck, 261 Ala. 531, 74 So.2d 915 (1954), and Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116 (1943).[2]

A natural and logical extension of this proposition is the holding of this Court in Hartigan v. Hartigan, 272 Ala. 67, 128 So. 2d 725 (1961). There, in upholding the lower court's order vacating an original divorce decree, the rule was laid down to the effect that where jurisdiction of the court was fraudulently invoked by the parties and this fact became apparent in a subsequent proceeding, although neither party attacked the validity of the original decree which was regular on its face, the court is empowered ex mero motu to set aside that decree.

■ While the facts on which *Hartigan* is based are restrictive, the principle supportive of its holding is not so limited. That principle authorized the trial Judge in the instant case, upon discovery of facts not revealed until the filing of the petition for rehearing, to correct on its own motion the fraudulent use of the judicial process. We hold that the action of the trial Court vacating the original decree of divorce and ordering a new trial was both necessary and justified in the exercise of its inherent power to protect the integrity of its judicial proceedings.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.

1. The distinction between the effect of the old system and the new rules is pointed out in the Committee Comments to Rule 60(b). For a clear and accurate summary of the purpose of Rule 60(b), see Judge Gewin's opinion in Bankers Mortgage Company v. United States, 423 F.2d 73, 77–79 (5th Cir. 1970).

2. For an excellent discussion of the available remedies against a final judgment, see Morgan, Alabama Trials and Appeals, Chap. 5, p. 461 et seq. (1966).