BRADLEY, Judge.
This is a divorce case.
The parties to this proceeding were divorced on December 6, 1976 for incompatibility and irretrievable breakdown of their marriage after four and one-half years of married life. The defendant-wife’s request for a rehearing was denied and she appeals.
The primary contention on appeal is that the trial court erred in the manner in which it divided the parties’ property in its award of alimony in gross.
There was no court reporter present during the trial of this cause, thus there is no reporter’s transcript of the evidence available for review; nonetheless, this court received a summary of the evidence heard by the trial court pursuant to the provisions of Rule 10(d), ARAP.
The facts gleaned from the Rule 10(d) summary demonstrate that the parties were married on January 29, 1972. Both had been married before and had minor children by those marriages. The plaintiff-husband’s children visited only on weekends while the defendant’s three children resided with plaintiff and defendant.
The defendant was under the care of a psychiatrist when the parties were divorced. Moreover, the evidence shows that defendant was an excessive user of alcohol and that her drinking materially contributed to the breakup of the couple’s marriage.
Plaintiff was employed on the night shift of U. S. Pipe & Foundry Company and earned approximately $15,000 to $18,000 annually. Defendant had worked parttime for about a year during the marriage at a weekly wage of approximately $12. She was unemployed, however, at the time of the divorce.
At the outset of the marriage the parties owned their own homes; however, they decided to sell their respective homes and buy a new dwelling in which to live. They subsequently sold their houses and bought another house. This house was purchased for $25,050.15. A down payment of $7,900 was made and the balance owed on the house was financed at monthly installments of approximately $137.76. The $7,900 down payment was paid by defendant out of her own funds. On the other hand, the monthly payments were made by plaintiff from his own earnings. When the marriage ended, plaintiff had provided $6,400 for the purpose of meeting the monthly house payments. However, since a large portion of the $6,400 represented payment on the interest incurred on the loan used to finance *175 the purchase of their home, the principal amount of the mortgage was only reduced by approximately $2,000. Consequently, when the marriage terminated, a balance of about $15,000 was still owed on the house.
The parties also held a joint savings account in the First Western Bank of Bessemer. At the beginning of the marriage, plaintiff had placed the proceeds ($7,000) from the sale of his own home in this account. Periodically he deposited additional funds in this account. Most of these subsequent deposits were the result of income tax refunds from the couple’s jointly filed income tax returns. Toward the end of the marriage, the balance in this account, i. e. $4,313.54, was transferred to an account in plaintiff’s name only. The evidence showed that a sizeable amount of money from this account was used to purchase cars for defendant. However, these purchases were commenced by the use of defendant’s car (which she owned at the time of her marriage) as a trade-in. The defendant also paid a portion ($1,000) of the purchase price of one of the automobiles obtained for her from her own separately held funds.
In addition to their savings account, the parties had a joint checking account at First Western Bank into which plaintiff placed his earnings. From this account plaintiff paid the monthly installment on the house loan, the utilities, about one-half the monthly grocery bill, automobile expenses and the other usual household expenses. At the time of the separation, plaintiff transferred the balance in this account, i. e. $314.20, to an account listed in his name only.
The defendant paid the other one-half of the grocery bill, bought clothes for herself and her children, and occasionally purchased some of plaintiff’s clothes. These expenses were paid by defendant out of the couple’s joint account with Birmingham Trust National Bank. The deposits were made to this account by defendant as a result of funds received from the Veterans Administration, Social Security, and U. S. Pipe & Foundry. These funds represented death benefits which the defendant was entitled to due to the death of her first husband. Plaintiff never placed funds into this account, nor did he ever withdraw any funds from the Birmingham Trust account.
The defendant also had a joint savings account with her mother at Birmingham Trust National Bank. The defendant had placed into this account insurance and workmen’s compensation proceeds which she had obtained as a result of the death of her former husband. Furthermore, $4,000 of the $7,900 down payment on the parties’ marital residence was paid out of this account.
At the time of the divorce the parties owned the following personal property: a 1975 Pontiac, a 1975 pick-up truck, and the furniture and household appliances accumulated from their prior marriages.
In its decree the trial court divorced the parties for incompatibility. The defendant was awarded the use of the marital residence, but the court specifically retained jurisdiction to dispose of the property at a future date. Pursuant to the latter provision, the plaintiff was given a $6,400 lien on the property. The defendant was required to make the mortgage payments, pay the taxes and insurance and keep the property in good repair. The title to the 1975 Pontiac was placed in defendant’s name, and plaintiff received the 1975 pick-up truck. The plaintiff was authorized to take possession of the furniture and household goods he owned prior to the marriage to defendant.
On appeal to this court, defendant’s initial argument is that since there is no material conflict in the evidence, the decree which was rendered by the trial court after an ore terms hearing is not entitled to a favorable presumption. Plaintiff contests this assertion and claims that there were conflicts in the evidence even though the summary of evidence prepared in accordance with Rule 10(d) does not indicate any conflicts. Moreover, plaintiff contends that a Rule 10(d) summary ordinarily would not show conflicts in testimony and therefore defendant’s proposition that the trial court’s decree is not entitled to the usual presumptions is incorrect.
*176 However, we need not make a determination on the validity or invalidity of the rather unique contentions regarding this matter which the able attorneys for both parties have submitted to this court since the record before us, i. e. the 10(d) summary, fails to persuade this court that the trial court’s judgment treated the defendant-wife so unfairly and unjustly in its division of the marital property as to constitute an abuse of discretion. It has become axiomatic that in divorce cases the trial court’s decree will not be reversed unless it clearly appears that the decree is plainly and palpably erroneous. In this case the trial court’s division of property cannot be said to have been plainly and palpably in error. Accordingly, the trial court’s decree is affirmed.
Parenthetically, we must note one final matter which was called to this court’s attention during the course of this appeal. After the trial court’s decree was rendered, counsel for defendant moved the trial court for a rehearing on his client’s cause. The trial court refused to grant the motion and as our decision today indicates it was not in error for so doing. However, in argument before this court, the lawyer who represented the plaintiff asserted that defendant could not appeal from the trial court’s order overruling her application for rehearing because the trial court did not modify the divorce decree. Instead, plaintiff’s attorney maintained that defendant’s appeal was limited to the substantive facts and findings presented and made during the trial.
Plaintiff’s argument in regard to this matter is based on Equity Rule 62 which provides “that no appeal shall lie from [an order denying a rehearing] unless it modifies the decree. . . Tilley, Alabama Equity Pleading and Practice Annotated, § 182 (The Harrison Co. 1954). However, the Alabama Rules of Civil Procedure have superseded Alabama Equity Rules. 1977 Alabama Rules of Court (Desk Copy) Appendix II at 332 (West Publishing Co. 1976). Consequently, all proceedings in equity are now governed by the Alabama Rules of Civil Procedure. Moreover, the committee comments to Rule 59, ARCP, state that the concept of a new trial under Rule 59, ARCP, is broad enough to include a rehearing of any matter for which rehearings were granted in equity. In brief, Rule 59 permits an application for a rehearing in equity to be designated as a motion for a new trial. Despite this fact, plaintiff contends that because defendant’s request for post-trial relief was designated the other way about — that is, what was in effect a motion for new trial was denominated as an application for rehearing — she is precluded from appealing the trial court’s denial of her post-trial request on the grounds that the court had not first modified the divorce decree. But given the fact that the rules of equity are no longer in effect, we do not believe such a harsh interpretation of the manner in which a motion is designated or labeled is warranted. Indeed, with the exception of the instances specified in our rules of civil procedure, motions, pleadings, and other procedural matters should be construed with liberality. Thus, we must conclude that a party who seeks relief from the denial or grant of a post-trial motion is entitled to appeal from the trial court’s action on his motion regardless of whether it is denominated as a motion for new trial or as an application for rehearing. See Crisco v. Crisco, 294 Ala. 168, 313 So.2d 529 (1975).
AFFIRMED.
WRIGHT, P. J„ and HOLMES, J., concur.