[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 760 
James Duckworth was employed by the St. Louis-San Francisco Railway Company, predecessor to the defendant, Burlington Northern Railroad Company (hereinafter "Burlington"), as an assistant in the right-of-way maintenance department. On December 21, 1978, he was working near Plantersville, Mississippi, as part of a crew of three men who were operating a motorized brush cutter. The brush cutter ran along the railroad track cutting the grass and bushes growing alongside the track's right-of-way. Two people operated the brush cutter; one person operated the right side of the cutter and one person operated the left side. Duckworth had been instructed to remain at a switch and wait on the brush cutter to return. For some unknown reason Duckworth approached the rear of the machine. When Duckworth was approximately 50 feet from the rear of the brush cutter, a piece of metal debris was thrown out from under the machine and that debris struck him in the throat. He died five days later as a result of the injury. He was survived by his wife and four minor children.
The plaintiff, James Duckworth's widow (as administratrix of his estate), alleged that while her husband was still in the hospital William E. Byrd, a claims agent for Burlington, approached her about a settlement of her claim. She claimed that Byrd gained her confidence and became her sole adviser because, she said, he led her to believe that he was representing her interest and her children's interest regarding compensation from Burlington for her husband's death from Burlington. She further alleged that immediately after her husband's funeral Byrd began to pay regular visits to her home and during those visits convinced her that she should not hire a lawyer because the lawyer would get more money than she would. She also claims that Byrd never explained the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA"), or any of the other possible basis she might have for an action or any damages that she or her children could receive. According to the plaintiff, Byrd convinced her that he would take care of her and her children and would get them everything they deserved from Burlington.
Approximately one year after James Duckworth's death, the plaintiff agreed to settle her claim with Burlington and Kershaw Manufacturing Company, the manufacturer of the brush cutter, for $151,500.[1] The plaintiff and Byrd met at the law office of the attorney representing Burlington. Unknown to the plaintiff, Burlington's lawyer had prepared a complaint on her behalf, an answer and waiver for Burlington, and a proposed judgment for the trial judge to sign. Kershaw, which was represented by separate counsel, had agreed to pay $40,000 of the settlement proceeds. No Kershaw representative ever met with the plaintiff. Kershaw's lawyers sent a copy of its answer and waiver to Burlington's lawyer, who attached it to Burlington's answer and waiver. Burlington's lawyer and Byrd and the plaintiff then met with Judge James E. Wilson of the Walker County Circuit Court to settle the plaintiff's claim for the agreed amount. Judge Wilson questioned the plaintiff about her knowledge of the finality of the settlement and her desire to settle for the stated amount. He then entered a judgment for the agreed amount on January 2, 1980.
On November 12, 1981, the plaintiff filed the present FELA action. She sued in her capacity as administratrix of James Duckworth's estate and for her benefit and that of the deceased's four minor children. In her complaint she alleged that her husband *Page 761 
had been an employee of Burlington and that he was killed on the job due to negligence on the part of Burlington and Kershaw. The plaintiff also alleged in her complaint that the January 2, 1980, settlement had been procured by fraud and therefore was null and void.[2] After many delays, this case was finally tried before a jury, and the jury returned a verdict in favor of the plaintiff for $460,000. The trial court entered a judgment in that amount on October 2, 1989. We affirm.
Burlington appeals on the grounds that the trial court erred in entering a judgment based on a jury verdict setting aside the January 2, 1980, judgment,[3] while stating in its order that this was done "despite a finding of no evidence of 'fraud upon the court.'" Burlington also argues that the jury instructions were in error. Burlington asserts as its final grounds for this appeal that the plaintiff's attorney made "improper and overly prejudicial statements" in closing argument.
 The Jury's Authority
In its brief, Burlington argues that the trial court should have granted its motions for a directed verdict and for a J.N.O.V. because the trial judge stated the following in his final order:
 "Were it not for the Duckworth decision [Ex parte Burlington Northern R.R., 470 So.2d 1094 (Ala. 1985)], this court would grant the J.N.O.V. This judgment, set aside by the jury, was a pro ami judgment in which a Circuit Judge, in open court, after a hearing, approved the settlement as being in the best interest of the then-minor children of plaintiff, Nettie Duckworth [and the deceased, James Duckworth]. There was no contention, nor any evidence, that any fraud was committed on the court."
Although it is not necessary for our determination in this case, we note that the January 2, 1980, hearing and subsequent judgment were insufficient to qualify as a pro ami proceeding under Alabama law.
 "This Court has recognized the special nature of an attempted settlement of a minor's claim. Before such a settlement can be approved, there must be a hearing, with an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor. Large v. Hayes, 534 So.2d 1101 (Ala. 1988); Abernathy v. Colbert County Hospital Board, 388 So.2d 1207 (Ala. 1980); Tennessee Coal, Iron R.R. Co. v. Hayes, 97 Ala. 201, 12 So. 98 (1892)."
Maryland Cas. Co. v. Tiffin, 537 So.2d 469, 471 (Ala. 1988). (Emphasis added.)
Based on the evidence presented at trial in this case, we conclude that the hearing conducted on January 2, 1980, failed to meet the standard set out above for determining whether the settlement was in the best interest of the deceased's children. There is no record of what the judge asked the plaintiff at the January 2, 1980, hearing, but at trial Burlington's lawyer and Byrd and the plaintiff all testified as to what the judge had asked her.
The plaintiff testified that the judge merely asked her whether she understood that the settlement offer would be all of the money she could ever get from Burlington and Kershaw due to her husband's death. Byrd testified that the judge asked the plaintiff some additional questions regarding her age, her educational background, the number of dependents she had, and whether she had consulted an attorney. *Page 762 
Burlington's lawyer testified that the judge also asked the plaintiff whether she wanted to settle the case for $150,000 and whether she had ever had any mental problems.
There is no evidence in the record that the judge conducted a hearing "with an extensive examination of the facts to determine whether the settlement was in the best interest of the minor[s]." Maryland Cas. Co., supra, at 471. The testimony in this case shows that the judge was concerned about the plaintiff but did not focus on whether the proposed settlement would be in the best interest of the children. The hearing was conducted in the judge's chambers, not open court, with only the plaintiff, Burlington's lawyer, Byrd, and the judge present. Moreover, there is no record of what transpired at the hearing in the judge's chambers. The January 2, 1980, settlement hearing, with the subsequent judgment, was not a valid pro ami proceeding conducted to determine whether the settlement would be in the children's best interest.
The law requires a more extensive hearing than is indicated here to determine whether a settlement is in the best interest of the minor. "[A] judgment entered on a compromise of an infant's claim is erroneous, and may be set aside where the court has made no examination or investigation of the facts to determine whether the compromise is for the best interest of the infant." Abernathy, supra, at 1209, quoting 42 Am.Jur.2d Infants § 47 (1978). There is nothing in the record to indicate that there was any investigation of the facts to determine whether the settlement would be in the best interest of the minors. Therefore, under Alabama law, the January 2, 1980, settlement proceeding was invalid as a pro ami proceeding on behalf of the children, and the consent judgment obtained as a result of that settlement would be voidable as to the four minor children.
The outcome of this case, however, hinges upon the validity of the prior consent judgment as to the plaintiff, because she was the personal representative of the deceased and the authority to settle any FELA claim rested solely with her.Benoit v. Fireman's Fund Ins. Co., 355 So.2d 892, on remand, 361 So.2d 1332 (La. 1978) (construing the Jones Act, 46 U.S.C. App. § 688 et seq., which incorporates portions of FELA). Burlington argues that the prior consent judgment acts as a bar to this suit. The jury, however, returned a general verdict in favor of the plaintiff for $460,000. We affirm.
The issue regarding the validity of the consent judgment as to the plaintiff is whether there was sufficient evidence upon which the jury could find that the January 2, 1980, judgment was procured by fraud. The FELA gives a cause of action to any interstate railroad carrier's employee who is injured while the carrier is engaged in interstate commerce. If an employee is killed, the Act creates a cause of action on behalf of that employee's "personal representative, for the benefit of the surviving widow . . . and children." See, e.g., Hoffman v.Reading Co., 12 F. Supp. 1010 (D.N.J. 1935). The personal representative is the proper plaintiff in FELA actions and acts as statutory trustee for the beneficiaries under the Act.St. Louis Iron Mtn. Ry. v. Craft, 237 U.S. 648, 656,35 S.Ct. 704, 705-706, 59 L.Ed. 1160 (1915); Lindgren v.United States, 281 U.S. 38, 41, 50 S.Ct. 207, 209,74 L.Ed. 686 (1930); Friedman v. McHugh, 168 F.2d 350
(1st Cir. 1948). Absent a conflict of interest, the authority to control the action or settle the claim rests solely with the personal representative. See, e.g., Benoit, supra;Pittsburgh, C.C. St. L. Ry. v. Collard's Adm'r, 170 Ky. 239,249, 185 S.W. 1108, 1113 (1916); see also Rule 17(c), Fed.R.Civ.P. In this case the plaintiff was the deceased's personal representative. Therefore, the authority to enter the January 2, 1980, consent agreement rested with her alone.
FELA allows an injured plaintiff to bring a suit in either federal or state court when the "ordinary jurisdiction as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws." In re SecondEmployers' Liability Cases, 223 U.S. 1, 57, 32 S.Ct. 169,178, 56 L.Ed. 327 (1912). When a plaintiff files an FELA action in state *Page 763 
court, the state court must apply the "applicable principles of common law as interpreted and applied in the federal courts."Chesapeake Ohio Ry. v. Kuhn, 284 U.S. 44, 47,52 S.Ct. 45, 45, 76 L.Ed. 157 (1931).
The stated goal of the federal courts in having the state courts apply federal law in state FELA actions is to achieve uniformity among the state court decisions. Bailey v.Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062,1063, 87 L.Ed. 1444 (1943); Dice v. Akron, Canton Youngstown R.R., 342 U.S. 359, 361, 72 S.Ct. 312, 314,96 L.Ed. 398 (1952). To achieve this end, the United States Supreme Court has held that by enacting FELA Congress preempted the field regarding an employer's liability to injured employees in the area of interstate rail transportation and superseded all state laws upon that subject. Chicago, M. St. P. Ry. v. Coogan, 271 U.S. 472, 474, 46 S.Ct. 564,565, 70 L.Ed. 1041 (1926). This preemption extends to all substantive matters raised in deciding FELA cases, which must be decided according to federal law. New Orleans Northeastern R.R. v. Harris, 247 U.S. 367, 371,38 S.Ct. 535, 536, 62 L.Ed. 1167 (1918).
The rights and obligations of parties to an FELA action are determined by applicable principles of law as interpreted and applied in federal courts. Pitcairn v. Perry,122 F.2d 881 (8th Cir.), cert. denied, 314 U.S. 697, 62 S.Ct. 414,86 L.Ed. 557 (1941). In other words, state courts trying FELA cases must apply the substantive law declared by the federal courts. However, most courts have held that state courts trying FELA cases should apply state procedural law. See, e.g.,Central Vermont Ry. v. White, 238 U.S. 507, 511,35 S.Ct. 865, 867, 59 L.Ed. 1433 (1915); Rodriguez v. Denver R. G. W. R.R., 32 Colo. App. 378, 512 P.2d 652 (1973);St. Louis-San Francisco Ry. v. Dyson, 207 Miss. 639,43 So.2d 95 (1949); Dice, supra; see also, A. Hill,Substance and Procedure in State FELA Actions — TheConverse of the Erie Problem?, 17 Ohio St.L.J., 384, 384 (1956). But see Illinois Cent. Gulf R.R. v. Price,539 So.2d 202 (Ala. 1988).[4]
The issue before us now, however, does not involve the enforcement of the plaintiff's FELA claim. Rather, we must determine whether there was fraud committed upon an Alabama court in procuring the consent judgment. That issue does not involve a federally created cause of action, and Alabama law must define what constitutes a fraud upon one of its courts. See, e.g., Ex parte Edmondson, 451 So.2d 290 (Ala. 1984).
Ex parte Burlington Northern R.R., 470 So.2d 1094
(Ala. 1985), based on an earlier proceeding in this same case, involved a petition by Burlington for a writ of mandamus. Burlington sought a writ ordering the trial court to strike the plaintiff's jury demand. In our opinion in that case, we recognized that under Alabama law an independent action brought to set aside or vacate a prior judgment procured by fraud is ordinarily an action in equity and that ordinarily there is no right to a jury trial in such actions. Id. at 1095. In that opinion, however, we held that because this is an FELA case a jury, and not a trial judge, must decide the validity of the January 2, 1980, consent judgment. Id. at 1095. Therefore, in this case the jury must determine the validity of the prior judgment, and it should apply Alabama law in making its determination. Compare Ex parte Burlington NorthernR.R., supra (validity of prior judgment in FELA case a jury question) with Ex parte Edmondson, supra (in FELA case Alabama law applied to determine if fraud had been committed upon an Alabama court).
In accord with our decision in Ex parte BurlingtonNorthern R.R., the issue of the validity of the consent judgment was tried before a jury. The jury returned a verdict in favor of the plaintiff, thereby *Page 764 
setting aside the prior consent judgment. The fact that the trial judge found no fraud upon the court is not grounds to overturn the jury verdict finding such fraud. The strength of the jury verdict is based upon the right to trial by jury,White v. Fridge, 461 So.2d 793 (Ala. 1984), and a jury verdict is presumed to be correct. Alpine Bay Resorts, Inc.v. Wyatt, 539 So.2d 160, 162 (Ala. 1988).
 "Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987). (Citation omitted.) See also Ashbee v. Brock,510 So.2d 214 (Ala. 1987); Jawad v. Granade, 497 So.2d 471
(Ala. 1986); and White, supra.
A court, or in this case the jury, has an inherent power to set aside and vacate a prior judgment as invalid because it is based on fraud practiced upon the court. Crisco v.Crisco, 294 Ala. 168, 313 So.2d 529 (1975). Rule 60(b), A.R.Civ.P., provides that it "does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three years after the entry of judgment to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." See Bricev. Brice, 340 So.2d 792 (Ala. 1976).
This case was filed approximately 22 months after the consent judgment was entered. Therefore, the plaintiff must show fraud upon the court in order for the judgment to be set aside. Rule 60(b)(6). We find ample evidence in the record to support the jury verdict that the January 2, 1980, consent judgment was procured by fraud upon the court. It follows that the jury was not barred from considering the underlying FELA claim, and that the consequent verdict on that claim was not wrong or unjust.
Fraud upon the court, as required to set aside a judgment under Rule 60(b)(6), has been defined as "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 7 J. Moore, W. Taggart J. Wicker, Moore'sFederal Practice ¶ 60.33 at 515 (2d ed. 1990), cited in Brown v. Kingsberry Mortgage Co., 349 So.2d 564,568 (Ala. 1977). This Court has also held that where fraud is practiced upon a party to induce the party to enter into an agreement, and the wrongdoer intends that the court adopt that fraudulent agreement as part of a judgment, then there is fraud upon the court. Brice, supra; see also Hill v.Hill, 523 So.2d 425 (Ala.Civ.App. 1987); Worthey v.Worthey, 491 So.2d 953 (Ala.Civ.App. 1986); Dentonv. Sanford, 383 So.2d 847 (Ala.Civ.App. 1980).
There was testimony at trial that the plaintiff had a ninth-grade education and that because of her husband's death she alone was burdened with the responsibility of caring for her four children. The plaintiff testified that throughout the year following her husband's death Byrd led her to believe that he represented her interest and her children's interest in settling their claim with Burlington. The plaintiff testified that she did not consult a lawyer because of Byrd's constant assurances that he could get her all the money she was entitled to from Burlington and that he would not charge her anything for his representation.
Over a year after James Duckworth died, Byrd told the plaintiff that all she could get from Burlington was $150,000. Byrd went to the probate court and petitioned for letters of administration on behalf of the plaintiff naming her as the administratrix of James Duckworth's estate. Byrd successfully used legal documents prepared by Burlington's lawyer to obtain the letters of *Page 765 
administration and to have the plaintiff appointed administratrix. Byrd then took the plaintiff to the office of Burlington's lawyer, where all of the documents necessary to complete the settlement between the plaintiff and Burlington and Kershaw were prepared.
Burlington's lawyer testified that he prepared a complaint on behalf of the plaintiff in order to make the settlement binding by obtaining it in the form of a final judgment. Burlington's lawyer had also prepared an answer and waiver on behalf of Burlington, as well as the proposed judgment that he wanted the judge to sign. Burlington's lawyer also testified that he explained to the plaintiff what the various documents were and that he, Byrd, and the plaintiff then went to the Walker County courthouse to see Judge Wilson for the purpose of having him sign a consent judgment. The plaintiff, however, testified that no one explained any of the documents or the procedure to her. She testified that she signed the documents because Byrd and Burlington's lawyer told her to.
There was no evidence that the trial court or the plaintiff was ever aware of any possible conflict of interest Burlington's lawyer had in writing a complaint on behalf of the plaintiff and advising her as to the terms of the settlement, even though he represented Burlington. Likewise, there was no evidence regarding whether the trial court was aware that Burlington's lawyer had drafted the complaint, the probate documents, and the other settlement documents filed on behalf of the plaintiff. Nor was there any evidence that the trial court was aware that the plaintiff had forgone legal counsel because of the actions of Byrd to convince the plaintiff that she needed no other legal representation. Based on these facts, there was sufficient evidence to support a jury finding that the defendant had perpetrated a fraud upon the court. SeeTaylor v. Dorough, 547 So.2d 536, 541 (Ala. 1989) ("[i]f a release is obtained from one in a weak condition, without advisers, for a sum grossly less than would be a fair and just compensation, a jury question of fraudulent inducement is presented").
In Brice, supra, this Court upheld the trial court's decision to set aside a prior judgment under Rule 60(b)(6) for fraud upon the court. In that case, the plaintiff brought an independent action under Rule 60(b)(6) to set aside the prior judgment, alleging as grounds that the defendant had fraudulently induced him to enter into an agreement that was made a part of a court judgment. The trial court inBrice found that "fraud was practiced upon the Court in that Mrs. Brice asked the Court to make this agreement a part of the Court's decree and that a substantial period of time passed after the Court entered the decree before Dr. Brice discovered the [fraud]." Brice, 340 So.2d at 794.
In this case, the jury could have reasonably found that Burlington had fraudulently induced the plaintiff to enter into the settlement. That fraudulent inducement would, as inBrice, support a finding of fraud upon the court when that fraudulent agreement was made the basis of the court's judgment. Viewing the evidence most favorably to the prevailing party, as we must do (see Campbell, supra), we conclude that there was evidence from which the jury could have found that Burlington, through its agents, fraudulently obtained the plaintiff's consent to the settlement. Therefore, the prior consent judgment was voidable.
We do not hold that a lawyer may never represent a client against a party who is not represented by legal counsel. An individual has a right to represent himself even though to do so might be ill advised. May v. Williams, 17 Ala. 23
(1849); see Jetton v. Jetton, 502 So.2d 756 (Ala. 1987). However, in such cases a lawyer has an increased duty of disclosure to the pro se party. Although DR 5-105(c)(1), Alabama Code of Professional Responsibility, is limited to divorce or other domestic relations cases, we strongly recommend that a lawyer follow a similar procedure in cases where the opposing party has forgone legal counsel and agrees to enter into a settlement or consent judgment. See also, Rule 1.8(k), Alabama Rules of Professional Conduct (effective January 1, 1991). This *Page 766 
course of conduct is especially prudent in cases where the pro se party is an unsophisticated individual who is in desperate circumstances. See, e.g., Taylor, supra.
In this case, the plaintiff was aware that Burlington's lawyer represented only Burlington. Burlington's lawyer, however, was aware that the plaintiff had only a ninth-grade education. In addition he knew that she had been suddenly widowed and left to care for her four minor children without the financial and emotional support of her husband for over a year. Furthermore, the record indicates that Burlington's lawyer was also aware that the reason that the plaintiff did not have an attorney was Byrd's insistence that he would "take care of" her. In any similar case the lawyer involved should be prepared to document that the pro se party knew that the lawyer was not representing his or her interests, knew that counsel could be obtained to represent those interests, and, knowing that, voluntarily and intelligently chose to proceed without legal representation.
 Jury Instruction
Burlington also argues that this case should be reversed on the grounds that the trial court gave improper jury instructions concerning fraud. As discussed above, at the trial of this case the issue was whether the January 2, 1980, judgment had been procured by fraud upon an Alabama court; that question is determined by state law. In Alabama "[a] party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial." Nunn v.Whitworth, 545 So.2d 766, 767 (Ala. 1989). If an objection to a jury charge is properly preserved for appeal, this Court will "look to the entirety of the trial court's charge to see if there was reversible error." Nelms v. Allied MillsCo., 387 So.2d 152, 155 (Ala. 1980). Reversal is warranted only when the error is considered to be prejudicial.Underwriters Nat'l Assurance Co. v. Posey,333 So.2d 815, 818 (Ala. 1976).
Burlington argues that the trial court erred when it instructed the jury that fraud could include misrepresentations made either willfully, recklessly, or mistakenly. Burlington further argues that an order setting aside the 1980 judgment can be based only on intentional fraud because, it argues, this case is governed by federal law. We hold that the trial court properly instructed the jury as to fraud.
Under federal law there is a requirement that fraudulent statements be made with scienter. The federal courts have held that in order to constitute fraud, a statement must be made with an intent to deceive or a disregard so reckless as to be the equivalent of an intent to deceive. J.P. Stevens Co.v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1559 (Fed. Cir. 1984). Burlington argues that, because the trial court instructed the jury that fraud could be based on a mistaken act, there was prejudicial error and that this judgment should be reversed. We disagree.
The trial judge correctly instructed the jury as to what constitutes fraud under Alabama law. We note that, regarding jury instructions on this point, Alabama law, not federal law, controls, because the jury must first determine whether the 1980 consent judgment may be set aside under the Alabama Rules of Civil Procedure, before the merits of the FELA claim are reached. In order to determine whether the consent judgment was procured by fraud, the jury must be instructed as to what constitutes fraud. The meaning of "fraud," as that word is used in Rule 60(b), A.R.Civ.P., must logically be determined by Alabama law rather than federal law. The Dice decision holds that there is a substantive right to a jury trial on the issue of the validity of the judgment. See Ex parteBurlington Northern R.R., supra. The jury, however, should be instructed on Alabama law to determine what constitutes fraud upon an Alabama court. Edmondson, supra.
In defining "fraud," the trial court relied upon Alabama's statutory law of fraud, Ala. Code 1975, § 6-5-100, which does not require intent to defraud (i.e., scienter) on the part of the one making the misrepresentations. This Court has long held that statements of fact made recklessly, *Page 767 
without knowledge, or by mistake, and acted upon, are actionable even without a fraudulent intent. Coleman v.Night Commander Lighting Co., 218 Ala. 196, 118 So. 377
(1928). Therefore, the trial court's jury charge was correct concerning the law of fraud.
 Closing Argument
Burlington raises as its final grounds of appeal certain statements that the plaintiff's attorney made in closing argument. Specifically, Burlington argues that it was prejudiced when the plaintiff's attorney used what it characterizes as the "golden rule"[5] argument and by remarks concerning punitive damages, which are not allowed in FELA cases.
A state court trying an FELA case must apply federal, rather than state, law concerning the propriety of counsel's argument to the jury. Sharkey v. Pennsylvania Central Transp.Co., 493 F.2d 685 (2d Cir. 1974); Duncan v. St.Louis-San Francisco Ry., 480 F.2d 79 (8th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973). See, e.g., Broussard v. Missouri Pacific R.R.,376 So.2d 532, 535-36 (La.App. 1979). Under federal law, counsel has great latitude in making arguments to the jury and the trial court is given considerable discretion to control those arguments. Vanskike v. Union Pacific R.R.,725 F.2d 1146 (8th Cir. 1984); Commercial Credit Equipment Corp. v.L A Contracting Co., 549 F.2d 979 (5th Cir. 1977);Schleunes v. American Casualty Co., 528 F.2d 634 (5th Cir. 1976); Duncan, supra.
Burlington argues that the plaintiff's counsel used what it calls the "golden rule" argument in his closing statements to the jury when he said that "we would all like the opportunity to say to our Maker. . . ." Under federal law closing arguments are made under the direct control of the trial court.Vanskike, 725 F.2d at 1149.
 "The standard of review on appeal is clear. 'The district court is in a better position to determine whether prejudice has resulted from a closing argument and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion.' . . .
 "To constitute reversible error, statements made in oral arguments must be plainly unwarranted and clearly injurious."
Id. (Citations omitted.)
The record reveals that the context of the portion of the argument complained of was intended merely to illustrate a point about the suddenness of James Duckworth's death, and was not prejudicial to Burlington. Moreover, the trial court gave full and complete instructions regarding the defendant's liability under FELA. "Significantly, the test most often applied by appellate courts to these cases, holds that the use of a 'Golden Rule' argument is rendered harmless either by an immediate curative instruction . . . or by a complete final instruction to the jury concerning its proper role in the determination of liability and damages issues." Edwards v.City of Philadelphia, 860 F.2d 568, 574 (3d Cir. 1988). (Citations omitted.) Accordingly, we hold that there was no abuse of discretion and no prejudice to Burlington that would warrant a reversal on this ground.
Likewise, Burlington urges reversal on the ground that the plaintiff's counsel made prejudicial statements concerning punitive damages. The portion of the plaintiff's argument that Burlington objected to was as follows:
 "But I can't help but think what would have happened if that judge up there [Judge Wilson in Walker County, who entered the January 2, 1980, consent judgment] had asked some tough questions. Tell me a little bit about the machine. Where was it cutting? Why did it hit a piece of metal? What are your calculations, Mr. Byrd, as to the lady's damages? And if the judge had asked those questions and had not approved the *Page 768 
settlement, there wouldn't have been a thing he could do to Mr. Byrd. He couldn't punish him. He couldn't say well, `I'm going to fine you because you tried to take advantage of this woman.' He couldn't do that.
 "[Defense counsel:] I think that that's an inappropriate argument. If he's implying . . . that he wants to punish the railroad. . . .
 "[Plaintiff's counsel:] You can't punish them. That's my whole point."
It is true that in FELA cases punitive damages are not allowed. Wildman v. Burlington Northern R.R.,825 F.2d 1392 (9th Cir. 1987). In this case, however, the plaintiff's attorney made it clear in his argument that the jury could not award punitive damages and that he was not asking for any. Furthermore, the trial court correctly charged the jury as to damages, and specifically admonished the jurors that punitive damages were not available to the plaintiff. "To constitute reversible error, statements made in oral arguments must be plainly unwarranted and clearly injurious," and the defendant "must show that the statements are unwarranted and make a concrete showing of prejudice resulting from the argument."Vanskike, 725 F.2d at 1149. Based upon our review of the entire record, we hold that there was no prejudice to Burlington that would warrant a reversal on this ground.
The judgment is due to be affirmed.
AFFIRMED.
JONES, SHORES and ADAMS, JJ., concur.
KENNEDY, J., concurs in the result.
MADDOX and HOUSTON, JJ., dissent.
[1] Burlington had already paid a total of $1,500 to the plaintiff over the preceding year. Consequently, the amount actually tendered to the plaintiff as a result of the settlement and resulting consent judgment was $150,000.
[2] The complaint also named Kershaw as a defendant and sought damages under the Alabama Extended Manufacturer's Liability Doctrine based on alleged negligent manufacture. For an excellent analysis of this doctrine, see E. Martin,Alabama's Extended Manufacturer's Liability Doctrine, 13 Am.J. Trial Advoc. 983 (1990). The trial court entered summary judgment in favor of Kershaw on the ground that it had played no role in the settlement negotiations and had not been a party to the alleged fraud. The plaintiff did not raise this issue on appeal.
[3] Under Alabama law a court sitting in equity, not a jury, ordinarily decides the facts in an independent action brought to set aside or vacate a judgment procured by fraud, accident, or mistake. Maddox v. Hunt, 281 Ala. 335,202 So.2d 543 (1967). However, in Ex parte Burlington NorthernR.R., 470 So.2d 1094 (Ala. 1985), we held that in FELA actions a jury must decide questions regarding the validity of a prior judgment.
[4] The present case is distinguishable from IllinoisCent. Gulf R.R., where we stated that in FELA cases "[u]nder the concepts of civility and courtesy . . . we defer to federal law, whether it be substantive or procedural, in enforcing a federal cause of action." Id. at 206. In this case we must first determine the validity of a prior state court judgment before reaching the merits of the plaintiff's FELA claim.
[5] A request that the jurors put themselves in the place of the plaintiff, made as an appeal to the jurors' feelings and passion, is an improper argument under federal law. Stokesv. Delcambre, 710 F.2d 1120, 1128 (5th Cir. 1983).