The plaintiffs, Larry and Elaine Phillips, brought an action against Thomas Travis,[1] from whom the plaintiffs had bought a house, and Wayne's Pest Control Company, Inc. ("WPC"), alleging fraud and breach of contract after they discovered that their house had been damaged by termites. The Phillipses appeal from a summary judgment for WPC on the fraud claim, made final pursuant to Rule 54(b), Ala.R.Civ.P.
In reviewing a summary judgment, this Court must determine if the moving party made a prima facie showing that there was no genuine issue of material fact and that he was entitled to a judgment as a matter of law. Raymond v. Amason, 565 So.2d 614
(Ala. 1990); A.R.Civ.P. 56. If the movant carries this burden, then the nonmoving party must rebut that showing by presenting substantial evidence creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12(d). "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870,871 (Ala. 1989). Additionally, all reasonable doubts concerning the evidence must be resolved in favor of the nonmoving party.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
On September 18, 1989, the Phillipses purchased Travis's house in Leeds, Alabama. The contract expressly provided that the existing termite bond on the house be transferred to the buyers at the seller's expense.
WPC had treated the house on August 17 and had given Travis a termite bond with an effective date of September 1, 1989. On October 12, 1989, WPC sent to the Phillipses a Veterans Administration ("V.A.") form entitled "WOOD DESTROYING INSECT INFORMATION — EXISTING CONSTRUCTION." In this form, WPC stated that "Based on careful visual inspection of the readily accessible areas of the property . . . [n]o visible evidence of infestation from wood *Page 1101 
destroying insects was observed." This form also provided, however, that "[t]his is not a structural damage report. Neither is this a warranty as to absence of wood destroying insects."
On that same day, WPC issued to the Phillipses a renewal of Travis's termite bond. The closing of the sale occurred in November 1989, and the Phillipses discovered no problems with termite infestation for several months. In the spring of 1990, Larry Phillips noticed active termites and substantial termite damage when he removed a rotten board while repairing the deck attached to the back of the house. Phillips then telephoned WPC, and Larry O'Brien, a WPC representative, came to inspect the house. After acknowledging the termites and the damage, O'Brien showed Phillips an August 17, 1989, graph of the house prepared by WPC and signed by Travis that had indicated the existence of the termites. Phillips told O'Brien that he had never seen that document.
Phillips subsequently asked the Alabama Department of Agriculture and Industries ("ADAI") to inspect the house. At the inspection, ADAI found active termites in the deck area, and it concluded that WPC's treatment of the house was "inadequate." ADAI then ordered WPC to retreat the house. WPC did retreat the house, but upon reinspection, ADAI once again discovered active termites. Thereafter, the Phillipses obtained an estimate from Colonial Construction Company for the cost of repairing the termite damage to the house; Colonial concluded that the cost of repair exceeded $8,000.
The essential elements of a fraud action are: 1) misrepresentation of a material fact; 2) made willfully to deceive, or recklessly without knowledge; 3) which was justifiably relied upon by the plaintiff under the circumstances; and 4) which caused damage as a proximate consequence. Harris v. M S Toyota, 575 So.2d 74 (Ala. 1991);Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746 (Ala. 1990).
The Phillipses argue that WPC defrauded them when it represented in the V.A. form of October 12, 1989, that "[n]o visible evidence of infestation from wood destroying insects was observed."[2]
The V.A., as a prerequisite to approving financing for a house, requires the buyer to have a pest control company inspect the house and to report on a V.A. form the condition of the house. The form provides, in pertinent part:
 "WOOD DESTROYING INSECT INFORMATION EXISTING CONSTRUCTION
". . . .
 "8. Based on careful visual inspection of the readily accessible areas of the property:
 "A. Visible Evidence of Wood Destroying Insects was observed. No control measures were performed.
 "B. No visible evidence of infestation from wood destroying insects was observed.
 "C. Visible Damage was noted: proper control measures were performed.
 "D. Visible damage due to _____ has been observed in the following areas: _____.
 "E. Visible evidence of previously treated infestation, which is now inactive, was observed."
WPC checked the box beside alternative B, and its general manager signed the form and dated it "10/12/89." The Phillipses argue that this statement constitutes either a willful or a reckless misrepresentation, Burlington Northern R.R. v. Warren,574 So.2d 758, 766-67 (Ala. 1990), because, they argue, two WPC agents had in fact observed active infestation in August 1989 and no one from WPC had reinspected the house before WPC issued the V.A. form on October 12, 1989. WPC appears to concede that it did not reinspect the house before October 12, 1989.
WPC raises two arguments. First, it argues that this situation is controlled by this Court's decision inReynolds v. Fowler Pest Control Insulation, Inc.,479 So.2d 1185 (Ala. 1985). Reynolds involved a fraud claim *Page 1102 
against a pest control company based on a V.A. form almost identical to the one here. In affirming a summary judgment for the defendant, this Court found it significant that the form was not a structural damage report and that it did not guarantee the absence of wood-destroying insects. The exact language from the Reynolds form is present on the form in this case.
However, the Reynolds Court did not base its decision entirely on the disclaimer in the form. The Court also stated that the plaintiff had been shown a graph indicating the existence of termites, and that he had admitted in his deposition that he understood the graph. Therefore, the Court found that the plaintiff in Reynolds knew of the termite infestation and could not have justifiably relied on the V.A. form. The Phillipses argue that because they never knew of the termite infestation, Reynolds should not control this case.
WPC argues that Reynolds should control even if the Phillipses had no knowledge of the August graph showing termites in the house, because, it says, it informed Travis of the termites and Travis therefore had a duty to inform the Phillipses of the termites.[3] This argument is flawed, because it addresses only the August 1989 inspection and treatment. The question of whether Travis informed or should have informed the Phillipses that WPC had found termites in August 1989 and had treated the house to remove them does not affect the question of whether WPC made a material misrepresentation on which the Phillipses could rely when it stated on the October 12, 1989, V.A. form that "[n]o visible evidence of infestation . . . was observed." If it made this representation without conducting another inspection of the premises, and if the Phillipses can present evidence that another inspection would have disclosed termites or termite damage (see below), the misrepresentation could support a verdict for the Phillipses. Any notice to the Phillipses that there had been a problem in August would not be such a contradiction of the representation on the V.A. form regarding an October inspection as to preclude any reliance on that representation. Thus, WPC's argument does not support an affirmance on the authority of Reynolds. See Savage v. Wright,439 So.2d 120 (Ala. 1983).
WPC also argues that its representation in the V.A. form that no "visible" evidence of termites existed cannot be false because, it says, Travis had nailed boards across the affected area to prevent detection of the damage; it alleges that it discovered this when it reinspected the premises in 1990. WPC argues that it would have had to remove the boards to discover the damage, and to do so, it says, is not its standard procedure.
The parties presented conflicting evidence as to whether Travis had concealed the termite infestation and damage. WPC presented the affidavits of three of its employees, who stated that, when they reinspected the property in July 1990, there were boards nailed to the damaged area and that those boards would have prevented WPC from discovering the infestation. However, Travis stated that he did not nail any wood to the house other than some lattice work around the deck, and he denied knowing of any termite infestation. The evidence is therefore conflicting as to whether the termite infestation had been concealed and, if so, when. Because a court may not determine the credibility of witnesses on a motion for summary judgment, WPC did not show the absence of a genuine issue of material fact as to whether "visible" evidence of termites existed when WPC issued the V.A. form. There is also a genuine issue as to whether WPC should have marked alternative "E" on the V.A. form in reference to the damage caused before the August treatment.
For the foregoing reasons, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED. *Page 1103 
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Thomas Travis's wife, Jennifer Travis, joined in the sale of the house and is also a defendant in the action, but we refer only to Thomas, for simplicity.
[2] Because we reverse on this ground, we pretermit other arguments by the Phillipses.
[3] Travis argues that he had no duty to tell the Phillipses about any termite infestation because they did not ask about termite damage. He also argues, and submitted evidence, that the diagram of the house that he signed did not show the presence of termites when he signed it and that WPC did not tell him the house had termites. We express no opinion on these questions.