Laurance Richard Noble filed an action pursuant to §25-5-11.1, Ala. Code 1975, against AAA Plumbing Pottery Corporation, alleging that his employment with AAA had been terminated in retaliation for his having filed a workers' compensation claim against *Page 766 
AAA. The trial court entered a summary judgment in favor of AAA. Noble appeals. This case is before this court pursuant to § 12-2-7(6), Ala. Code 1975.
Noble began working for AAA in February 1988. In August 1988 he injured his back while working as a trainee in AAA's cast shop. He injured himself while lifting an object weighing between 50 and 70 pounds. The report made at the time by Noble's supervisor stated that the injury was caused by Noble's unsafe procedure used in lifting the objects. The supervisor suggested "[p]ossibly job relocation in the plant" as a remedy. Noble missed six days from work as a result of the injury.
In March 1989 Noble injured his back again while working as a kiln loader/unloader. While unloading, he lost his balance and fell backwards, tripping over a pallet. Following the injury, his supervisor reported that Noble "hasn't fully learned to look ahead and foresee problems. I have instructed him to be more careful to allow himself working area when he has to pull into the work aisle." Noble missed three days of work as a result of the injury.
In July 1989, while still working in the kiln loader/unloader position, Noble injured himself again while lifting an object weighing between 50 and 70 pounds. He missed several days from work as a result of the injury.
In October 1989, while working in cast shop cleanup, Noble injured himself by allowing a ware hopper to roll over his left foot. His supervisor's report listed the cause of the accident as "carelessness."
In December 1989 Noble injured his back again. He was in the position of cast shop cleanup. He injured himself while picking "green" ware off the floor. His supervisor's report stated that Noble "tried to pick up too much at once." As a result of this injury, Noble missed approximately 90 days from work.
Noble again injured his back in the cast shop cleanup position on March 27, 1991. He returned after missing a week from work. On April 11, 1991, he reinjured himself.
On April 29, 1991, Gene Minton, Noble's supervisor, sent Noble a letter, warning him that his injury record was excessive. The letter stated the following:
 "In less than three years since you were hired, you have had seven (7) work-related injuries, with loss time of one hundred thirty-two (132) days.
 "The jobs you have been performing do not require maximum physical effort, and yet your accident record is far more severe than [that of] any other employee performing [the] same or similar jobs.
 "If your injuries continue, further action will include disqualification from your present job and we are not sure we will have another job in the Plant because of your [lack of] seniority."
On April 29, 1991, the same day that Minton's letter was sent, Noble injured himself once again.
On May 20, 1991, while Noble was still off work as a result of his April 29, 1991, injury, Minton sent a letter to Noble, notifying him that he was being disqualified from his job of cast shop cleanup. The letter further notified Noble that he was being placed on temporary layoff because his low seniority would not allow him to displace any other senior employee in any job that Noble was physically able to perform. The letter stated the following:
 "As you have been previously informed, your accident record is far more severe than [that of] any other employee performing the same or similar jobs. The jobs you have been performing do not require maximum physical effort and yet your injuries continue.
 "We feel it necessary to disqualify you from your job of cast shop cleanup for your own safety and well being, as you are obviously not physically suited for this job or you are not performing it in a safe manner.
 "As a result of your disqualification, there is no work available for you at this time, [and] you are being placed on indefinite layoff effective this date."
Noble remained on AAA's roster and seniority list for a period of three years pursuant to the collective bargaining agreement *Page 767 
between AAA and Noble's union. While the summary judgment motion was pending, AAA posted a job opening for kiln utility. Noble signed the bid and was the most senior employee to do so. The lifting requirements for that job were more strenuous than the lifting requirements for the cast shop cleanup job.
AAA decided to send Noble to a neurologist to determine whether it would be medically advisable for Noble to be placed on the kiln utility job. AAA provided the neurologist with Noble's medical history and the descriptions of the various jobs at AAA.
The neurologist performed a physical examination of Noble, which was essentially normal. Based on all the information, the neurologist opined that Noble should not be placed on any job as strenuous as the cast shop cleanup job. He reported his findings to AAA in a letter. The letter provided the following:
 "This gentleman indeed has no mechanical or radicular problems at the present time, and claims to have been asymptomatic since 1991. However, in looking at the job requirements for the Kiln-Utility-Placer, this seems far more likely to cause further back problems than the job that he was injured on previously. In fact, looking at your master list of job ratings, in terms of the strenuous nature of the job, the Kiln-Utility-Placer Relief is approximately ten times as strenuous as the Cast Clean N S Shop job.
 "Because of a situation of multiple injuries on heavy jobs, and in spite of the current work that the patient says he is doing, I would think that it would be very much in the interest of this patient's future health and safety to avoid anything more strenuous than the job on which he was last injured. In fact, I would certainly advise something less strenuous than that.
 "I note that there are approximately 15 jobs that are less strenuous than the one at which he was injured, and I would certainly restrict him to one of those."
Based upon the neurologist's medical advice, and consistent with its earlier decision, AAA decided to disqualify Noble from the kiln utility job. The kiln utility job was the only position for which Noble submitted a bid.
The record reflects that in October 1989 the United States Occupational Safety and Health Administration (OSHA) cited AAA for exposing its employees to an unacceptable risk of musculoskeletal injuries. OSHA ordered AAA to identify all current employees who experienced symptoms of musculoskeletal injuries and to develop a medical surveillance system for tracking such injuries. OSHA also ordered AAA to develop plans for reducing such injuries. Based on these recommendations, AAA instituted a program of identifying employees with an excessive number of musculoskeletal injuries and disqualifying such employees from performing jobs with heavy lifting requirements.
A motion for a summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.McDonald v. Servpro, 581 So.2d 859 (Ala.Civ.App. 1991). If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of fact. Grider v. Grider, 555 So.2d 104 (Ala. 1989). In order to defeat a properly supported summary judgment motion, the nonmovant must create a genuine issue of material fact by presenting substantial evidence. McDonald. Substantial evidence is " 'evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven.' [Ala. Code 1975,] § 12-21-12(d)." EconomyFire Casualty Co. v. Goar, 551 So.2d 957 (Ala. 1989). An appellate court reviews the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359
(Ala. 1993).
Section 25-5-11.1, Ala. Code 1975, provides:
 "No employee shall be terminated by an employer solely because the employee has *Page 768 
instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter."
Concerning actions brought under this section, our supreme court has held:
 "[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364
(Ala. 1988).
In the context of a summary judgment motion made by the defendant in a retaliatory discharge action, our supreme court has held:
 "[I]f the defendant has supported a summary judgment motion with evidence of a legitimate reason for terminating the plaintiff, the plaintiff must then refute that showing with his own prima facie case; of course, the plaintiff has no burden to produce evidence before trial until the defendant has made and properly supported a motion for summary judgment. If the defendant's showing of a legitimate reason is conclusive enough to establish that 'there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56(c), Ala.R.Civ.P., the plaintiff would also have to produce evidence to refute that showing."
Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala. 1992).
Noble contends that he established a prima facie case of retaliatory discharge because, he says, he showed that his employment was terminated after he suffered an on-the-job injury and filed a claim seeking workers' compensation benefits.
AAA submitted substantial evidence underlying its nondiscriminatory reason for terminating Noble's employment. Noble injured himself on seven occasions over a three-year period, with lost time from work of 132 days. Several of the injuries occurred under circumstances suggesting that Noble had failed to exercise ordinary care to avoid injuring himself.
Our supreme court has held that physical inability to perform a job, where the employer has no other jobs that the employee can perform, constitutes a legitimate, nondiscriminatory reason for termination of employment. Harrison v. Southern Pine Elec.Coop., Inc., 603 So.2d 1004 (Ala. 1992). Our supreme court has also found that termination of employment based on excessive absences is a legitimate, non-discriminatory reason for a discharge, even where the absences resulted from an on-the-job injury. Smith v. Dunlop Tire Corp., 663 So.2d 914 (Ala. 1995). AAA's refusal to allow Noble to continually reinjure himself in a job that he could not perform safely was consistent with "good business and managerial practices." Irons v. ServiceMerchandise Co., 611 So.2d 294 (Ala. 1992).
From our review of the record, we find that Noble failed to present evidence that AAA terminated his employment because he filed a workers' compensation claim. There was no evidence offered that the reasons which AAA gave for terminating Noble's employment were a pretext for an otherwise impermissible termination. From our review of the record, it appears that AAA had at least six previous opportunities to terminate Noble's employment for filing workers' compensation claims. AAA chose not to. Noble's "disqualification/termination" was in his best interest. If AAA had acted otherwise, it would have demonstrated an almost total lack of concern for Noble's safety.
In view of the above, we find the trial court's entry of a summary judgment to be proper.
Noble next contends that the trial court erred in considering the testimony of the neurologist who examined him. Noble cites no authority to support his argument. We, therefore, decline to entertain it. Harris *Page 769 v. Harris, 528 So.2d 866 (Ala.Civ.App. 1988).
Noble contends that the trial court erred in precluding him from obtaining necessary discovery. He insists that the trial court's order prevented him from conducting discovery of other employees whose employment had been terminated for retaliatory purposes.
The trial court's order did not prevent Noble from conducting discovery concerning employment terminations of other employees. The order simply precluded him from obtaining discovery concerning two employees, neither of whom was ever terminated from employment or laid off by AAA. Furthermore, Noble failed to file an affidavit pursuant to Rule 56(f), Ala.R.Civ.P., alerting the trial court that there was a crucial need for further discovery. Noble's failure to do so precludes us from reaching the merits of his argument. Terry v. LeeApparel Co., Inc., 656 So.2d 811 (Ala.Civ.App. 1994).
Finally, Noble asserts that the trial court erred in refusing to consider "newly discovered" evidence submitted in support of his motion for a new trial.
We find Bean v. State Farm Fire Casualty Co., 591 So.2d 17
(Ala. 1991), to be dispositive of this issue. We find no error.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.