777 So.2d 66 (2000)
Ex parte Clint C. USREY.
(Re Clint Usrey v. Wal-Mart Stores, Inc.)
1961859.
Supreme Court of Alabama.
June 23, 2000.
*67 John T. Robertson IV of Henslee, Robertson & Strawn, L.L.C., Gadsden, for petitioner.
Charles F. Carr, Glenn E. Ireland, and Sarah J. Carlisle of Carr, Allison, Pugh, Oliver & Sisson, P.C., Birmingham, for respondent.

On Application for Rehearing
PER CURIAM.
The opinion of July 31, 1998, is withdrawn and the following opinion is substituted therefor.
Clint C. Usrey filed an action against Wal-Mart Stores, Inc., seeking 1) workers' compensation benefits and 2) damages based on a claim that he had been wrongfully discharged, in violation of Ala.Code 1975, § 25-5-11.1, as retaliation for seeking workers' compensation benefits. Wal-Mart filed a motion for a summary judgment, and Usrey responded with evidentiary filings in opposition to the motion. Following a hearing, the circuit court entered a summary judgment for Wal-Mart on the wrongful termination claim and made that summary judgment final, pursuant to Rule 54(b), Ala. R. Civ. P. The Court of Civil Appeals, on June 6, 1997, affirmed, without an opinion. Usrey v. Wal-Mart Stores, Inc., (No. 2960170) 720 So.2d 1064 (Ala. Civ.App.1997) (table). This Court granted Usrey's petition for a writ of certiorari because the Court of Civil Appeals' decision appeared to conflict with prior decisions.
Usrey was continuously employed with Wal-Mart from June 20, 1990, until his termination on December 14, 1994. He began working at the Wal-Mart store in Douglasville, Georgia, and he transferred to the Anniston store in 1991. While working as a cashier on February 23, 1994, *68 he injured his back when he lifted a 25-pound bag of dog food to scan it for a price. He immediately reported the injury to his supervisor. Usrey's supervisor sent him for medical treatment. Usrey reported for work the next day. The store manager called Usrey into his office and, in front of Usrey's supervisor, told Usrey that if he hired an attorney he would be fired. Several days later, Usrey's supervisor placed him on medical leave of absence as a result of the injury.[1] Upon returning to work after being released to light-duty work by his treating physician, Usrey claims, he was treated rudely by Wal-Mart supervisors and managers, and he says that such conduct had not occurred before his injury. Usrey further contends that he was never paid any benefits for not being able to work, and that some of his medical expenses were paid to a point but then even they were stopped. After Usrey returned to work, he told his supervisor that he had hired an attorney because "workers' compensation was not paying for nothing." Shortly after this conversation, the store manager fired Usrey.
A summary judgment should be entered only upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. "[A] court may not determine the credibility of witnesses on a motion for summary judgment." Phillips v. Wayne's Pest Control Co., 623 So.2d 1099, 1102 (Ala.1993). In reviewing a summary judgment, this Court is to view the evidence in a light most favorable to the nonmovant and to resolve all reasonable doubts against the movant. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992). A nonmoving party can defeat a properly supported summary judgment motion by presenting substantial evidence creating a genuine issue of material fact. Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349 (Ala.1994); Ala.Code 1975, § 12-21-12.
"[A]n employment contract is generally terminable at will by either party, with or without cause or justificationfor a good reason, a wrong reason, or no reason at all." Culbreth, supra, 599 So.2d at 1121 (citations omitted). "However, with regard to dismissals based on the filing of [workers'] compensation claims, the legislature has carved out an exception to this general rule." Culbreth, supra, 599 So.2d at 1121 (citations omitted).
Section 25-5-11.1 provides:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover *69 workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11."
Usrey established a prima facie case of retaliatory discharge by presenting evidence to support his contentions that he was injured on the job, that his injury prevented him from working for a period of time, and that he was discharged shortly after his employer learned that he had taken steps toward filing a workers' compensation claim based on the injury. See Culbreth, supra. The burden then shifted to Wal-Mart to present evidence to support its assertion that Usrey was terminated for a legitimate reason; if it did so, then Usrey would have to produce rebuttal evidence tending to show that the reason given by Wal-Mart was not true but was a pretext for an otherwise impermissible termination. Id.
Wal-Mart alleges that Usrey was terminated solely for sexually harassing a female coworker, that his conduct violated the company's sexual-harassment policy, and that the policy clearly states that any offender could face termination. Specifically, Wal-Mart submitted evidence that on November 29, 1994, Usrey rubbed the coworker's back and made a comment to the effect that "he could tell [she] was wearing a bra but he knew she wasn't wearing bloomers because her `butt jiggled' while she was walking." In support of its asserted reason for discharging Usrey, Wal-Mart made evidentiary filings with its motion for summary judgment. These filings included certain business records regarding employees who had filed workers' compensation claims and affidavits from Wal-Mart managers and employees. Among the affidavits were one from the coworker who had complained that Usrey had made the sexually harassing comment to her, one from a fellow employee who said that she witnessed the incident, and one from Larry Kilgore, the manager who terminated Usrey.
According to the affidavits submitted by Wal-Mart, after the harassing comment was made the coworker reported the incident to the assistant manager, Keith Starnes, who then reported the incident to the support manager, Debra Frey. Frey stated that she discussed the matter with the coworker and the witness and then reported the incident to Kilgore. On December 14, 1994, Kilgore and assistant manager Dot Miller met with Usrey to discuss the incident, and at that meeting Usrey gave the following written statement:
"Deana and Leigh was out by the time clock. I compliment Deana on her outfit, it was jumper outfit. Leigh, Deana, and I was both laughing of this. Nothing was never said out of the way about sexes thing or anything like that. Perhaps she or they just took it the wrong way. This is a statement from Clint C. Usrey freely on my own in front of Dot Miller and Larry Kilgore."
(Emphasis added.) Kilgore stated in his affidavit that he never told Usrey that he would fire him if he hired an attorney for his workers' compensation claim and that until this action was filed he did not know that Usrey had obtained an attorney. Dolores Steward, the customer-service manager whom Usrey told that he had hired an attorney, submitted an affidavit stating that she did not have a discussion with Kilgore about whether Usrey had obtained an attorney to represent him in regard to his workers' compensation claim. Frey and Miller also submitted affidavits, but not Starnes.
The burden then shifted to Usrey to go forward with rebuttal evidence tending to prove that Wal-Mart's stated reason was not true. Usrey responded with evidence that included his affidavit and the affidavit of Teresa Lumpkin, a former coworker. Usrey also filed "performance reviews" from the years he had worked at Wal-Mart.
*70 In his affidavit, Usrey stated that after he reported his injury to his supervisors they acted as if they were upset with him for being injured at work. He stated that, although he had been treated relatively well by the managers at Wal-Mart up until the time of his injury, after the injury he was treated rudely, the managers acted cold toward him, and he could not do anything to their satisfaction. Usrey said that he was "upset about the way that [he] was being treated because of his injury, and [he] made a comment to Debra Frey that [he] would see an attorney about it." He stated that he then saw Frey talking to Kilgore and pointing toward him, and that the next day he was taken to Kilgore's office, where Kilgore told him that, if he hired an attorney in connection with his on-the-job injury, he would be fired as soon as Kilgore learned of it.[2] Kilgore denied making this statement. However, Kilgore fired Usrey just days after Usrey informed Frey that he had hired an attorney because "workers' compensation was not paying for nothing."
Usrey testified that during the meeting in Kilgore's office, Kilgore would tell him only that he had received a sexual-harassment complaint and asked him if he had been talking to any associates about bloomers and bras. Usrey said no. Then, without telling him who, Kilgore asked if he had said anything about how someone looked. It was only then, Usrey testified, that he "finally realized" that Kilgore must have been talking about a conversation he had had with a coworker wherein he told her "that her hair looked good and that her outfit was cute."[3] According to Usrey, Kilgore would not tell him what the allegation was and would not let him talk to his accusers. It was at this time that, at Kilgore's request, Usrey gave the statement quoted above saying that "[n]othing was never said out of the way about sexes things or anything like that."[4] Kilgore then terminated Usrey.
Usrey further alleges that Wal-Mart had decided to terminate him, before questioning him or informing him that a complaint even existed. This allegation is supported by Usrey's testimony that the paperwork for his termination was already filled out and sitting on Kilgore's desk when Usrey was called in to give a statement regarding the incident. Usrey clocked in that day at 2:50 p.m., and he was terminated by 3:30 p.m. To justify the hasty termination, Wal-Mart relies on the fact that its sexual-harassment policy clearly provides that termination is a possible disciplinary action. However, the same policy also clearly provides that management "must thoroughly investigate" a report of sexual harassment, and that "[f]ollowing the investigation ..., if the complaint is determined to be valid, *71 the offender will face ... appropriate disciplinary action based upon the severity of the harassment and other relevant factors." (Emphasis added.)
Even though he denied making the sexually harassing comment, Usrey was fired that same day, from a job he had held for over four years without any similar complaints having been made. He even presented evidence, by way of evaluations of his past performance, indicating that no such incident had taken place before and that there had never been any sort of complaint about him in the past. Of the performance evaluations filed with the court, one was a "reference check" conducted by Wal-Mart personnel; it stated that Usrey "transferred from Douglasville, Ga.was given a good reference from them at the time of his transfer." Usrey was given an above-average rating in the other two performance reviews, one from 1992 and one from 1993. These reports contained comments stating that he was "dependable" and "flexible," that he "will work anywhere he is told," that he is "a friendly associate," that he is "rarely late," and that he is "courteous toward customers and always offers help." Also, Lumpkin stated in her affidavit that she finds any allegations of sexual harassment against Usrey to be totally inconsistent with any behavior of Usrey that she had personally observed in the numerous times she had been around him at work.
Additionally, Usrey's affidavit stated that he had previously had problems with the coworker who Wal-Mart alleges made the sexual-harassment complaint against him. Usrey had reported the coworker for taking breaks that were longer than allowed. As a result of Usrey's report, the coworker had received a reprimand for her actions. Lumpkin testified to this incident as well and also testified that this coworker is "very flirtatious" with the male members of management at the store. Lumpkin even said that the coworker had indicated to her that she was seeing one of the managers romantically. Lumpkin stated that, knowing what she did about the nature of the coworker who made the complaint, that coworker's relationship with male members of management at Wal-Mart, and Wal-Mart's claim that Usrey was terminated for making such statements as he is claimed to have made to this coworker, she finds the claim to be ridiculous and that she "almost laughed out loud" when she first heard it. Lumpkin also added that, unlike the coworker making the claim and unlike the person who claims to have witnessed the incident of harassment, she is under no pressure not to reveal the facts surrounding this matter, because she is no longer employed by Wal-Mart.
Usrey also presented evidence tending to prove that Wal-Mart had a pattern and practice of terminating employees who filed claims for workers' compensation benefits. Documents produced by Wal-Mart show that, as of the time that Kilgore fired Usrey, every employee who had suffered a compensable injury and had returned to work at the Anniston store had been fired or had resigned. Usrey himself, as well as Lumpkin, testified to this. Usrey testified by affidavit that "[every] person that I know of [who] has been injured at [the Anniston store] has been terminated" shortly after he or she returned to work. Lumpkin asserted that it was "general knowledge at the store that anyone that had been injured on the job in a workman's compensation covered situation would be mistreated by the store thereafter." Lumpkin testified that she was treated differently by Wal-Mart management after she returned to work from suffering an on-the-job injury. She stated that she was "forced to resign" after her injury because, she said, Wal-Mart management abused her, criticized her, and made her miserable in her employment. She, like Usrey, testified that she could do nothing to please the Wal-Mart managers after she was injured. Lumpkin also stated that Wal-Mart had falsified its records pertaining to workers' compensation injuries, *72 which it presented in support of its motion for summary judgment, in regard to the reason for her termination. As noted above, Lumpkin stated in her affidavit that her reason for resigning was that she was mistreated after suffering an injury covered by the workers' compensation statute. However, on its "exit interview" form, Wal-Mart stated that she was voluntarily terminated because of "sickness in family." Lumpkin stated that this was not true. The record contains numerous disputed questions of fact surrounding this issue that should be determined by a fact-finder.
The two cases cited by the Court of Civil Appeals in its unpublished memorandum of affirmance are not sufficiently similar factually to the case before us to serve as a basis for affirming. See Graham v. Shoals Distributing, Inc., 630 So.2d 417, 418 (Ala. 1993), and Noble v. AAA Plumbing Pottery Corp., 677 So.2d 765 (Ala.Civ.App. 1995). These are simply two cases in which summary judgments for the employers were affirmed. Among other distinctions, no rebuttal evidence of pretext was presented in either case.
There are several other retaliatory-discharge cases, all of which were cited in Usrey's petition, that are more factually similar to this case. In each of those cases, it was held that a genuine issue of material fact existed. See Culbreth, supra; Bird v. Nail Air Freight, Inc., 690 So.2d 1216 (Ala.Civ.App.1996); and Carroll v. A.J. Gerrard & Co., 684 So.2d 128 (Ala.Civ. App.1995). The employer in each of those cases moved for a summary judgment and in support of its motion presented evidence indicating that it had had a legitimate reason for terminating the employee. In Culbreth and Bird, the only rebuttal evidence presented by the employee was his own affidavit. In Carroll, the rebuttal evidence consisted of the employee's affidavit and that of one other coworker, just as in this case. In each of these three cases, the reviewing court held that the summary judgment was not appropriate. The Court of Civil Appeals' decision in this present case conflicts with the decisions in Culbreth, Bird, and Carroll.
In Culbreth, when Culbreth returned to work after recovering from his on-the-job injury, he was told that the company no longer had a job for him. The employer presented evidence indicating that Culbreth's position had been filled while he was on a leave of absence and that it did not have enough work to continue his employment. The only evidence Culbreth presented to indicate that the employer's explanation was a pretext was his own affidavit stating that, when he returned to work, the owner and another member of management went into an office for 10 to 15 minutes and then came out and told him that while he was out they had hired someone else to replace him. The circuit court entered a summary judgment for the employer. This Court reversed, holding that Culbreth's evidence was sufficient to bring the employer's reason into question and holding that a jury question existed as to whether the employer's given reason was indeed legitimate. We noted that the delay of 10 to 15 minutes in giving Culbreth a reason for his termination could serve as circumstantial evidence from which a jury could infer that the employer fabricated the asserted reason. Surely, if a reasonable person could infer that the reason in Culbreth was fabricated in 10 to 15 minutes, then one could infer that a claim such as Wal-Mart's claim in the present case could be fabricated in the few days between the time when Wal-Mart learned that Usrey had hired an attorney and the time when it terminated his employment.
In Bird, as in the case before us, the employee testified that his employer became upset with him for being injured and missing work to recover. However, the employer testified that he fired Bird because, he said, Bird had threatened to destroy the employer's building and delivery trucks. In support of its reason, the employer presented affidavits from four employees who stated that they had heard *73 Bird make the alleged threats. In opposition, Bird presented only his own affidavit and excerpts from his deposition. The Court of Civil Appeals, in reversing a summary judgment for the employer, held that Bird had presented evidence sufficient to create a genuine issue of material fact, noting that the record merely contained "disputed testimony" and the jury might simply believe one party's assertions over the other's. 690 So.2d at 1219. This Court denied the employer's petition for certiorari review. Ex parte Nail Air Freight, Inc., 690 So.2d 1219 (Ala.1997).
In Carroll, the employer presented evidence supporting its assertion that in the past Carroll had received oral and written reprimands for low production and that he had urged another coworker to slow down his production. Like Wal-Mart, that employer attempted to rely on the fact that the alleged practices were potential grounds for dismissal and the fact that the employee was aware that they were. Like Usrey, Carroll presented his own affidavit, in which he claimed that the administration became upset with him about his workers' compensation claim, and the affidavit of a coworker, who testified that the employer had a pattern and practice of reacting in this way to workers' compensation claims and of terminating employees based on their filing claims. The Court of Civil Appeals in Carroll, viewing the evidence in a light most favorable to the nonmoving party, held there was sufficient evidence to create a genuine issue of material fact as to whether the reason given by the employer was a pretext for an impermissible retaliatory discharge. The employer's summary judgment was reversed.
Usrey presented substantial evidence creating a genuine issue of material fact that should be presented to a jury. "Alabama's [workers'] compensation laws should be liberally construed in favor of the employee in order to advance and effectuate their beneficent purposes." Culbreth, 599 So.2d at 1123 (citing Hilyard Drilling Co. v. Janes, 462 So.2d 942 (Ala. Civ.App.1985)). To hold that Wal-Mart's asserted reason is conclusively legitimate would undermine the beneficent purposes of § 25-5-11.1. The record of this case is full of disputed testimony. A jury could simply believe Usrey's evidence over Wal-Mart's.
Usrey's evidence created a genuine issue of material fact as to whether Wal-Mart's stated reason for terminating Usrey was merely a pretext for an otherwise impermissible discharge. Therefore, we reverse the judgment of the Court of Civil Appeals and remand the case for further proceedings consistent with this opinion.
APPLICATION FOR REHEARING DENIED; OPINION OF JULY 31, 1998, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
COOK, J., concurs specially.
HOUSTON, J., concurs in the result.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., dissent.
COOK, Justice (concurring specially).
On original deliverance I dissented from the plurality opinion. On the application for rehearing, I have restudied the arguments and supporting materials. I conclude that the evidence presented by Usrey, as outlined in the opinion, does create a genuine issue of material fact as to whether WalMart's stated reason for terminating Usrey was a pretext for an impermissible termination. I therefore concur in the opinion and the judgment and in the denial of the application for rehearing.
HOUSTON, Justice (concurring in the result).
I concur in the result.
I believe that there was evidence, sufficient to go to a jury, indicating that Wal-Mart intended to discharge Clint C. Usrey for an illegal reasoninstituting or maintaning *74 a claim against Wal-Mart for workers' compensation benefits. However, at a time when it had not acted on that illegal reason, Wal-Mart was given a perfectly legal reason for discharging him sexual harassment.[5] I believe that it is for the finder of facts to determine whether Usrey's alleged sexual harassment of a female coworker played any part in Wal-Mart's decision to terminate Usrey; and, if it is so determined, then the finder of facts must find for Wal-Mart. It is only if the finder of facts determines that Usrey was discharged solely for instituting or maintaining a claim or an action for workers' compensation benefits that Usrey may recover against Wal-Mart for wrongful termination.
HOOPER, Chief Justice (dissenting).
There are certain things for which an employer can expect to be sued, and, if the employer loses, he can expect to pay royally. Racial discrimination is one of those things. Sexual harassment is another. Wal-Mart Stores, Inc., terminated Clint Usrey because of allegations by a female coworker and a witness regarding what can at best be described as "shabby" treatment of that coworker while she was on the job. Because Wal-Mart took swift and effective action to prevent such behavior by an employee, this Court places Wal-Mart in a "catch-22"retain an employee who harasses women on the job and face a possible sexual-harassment lawsuit, or terminate that employee and face a retaliatory-discharge lawsuit. The main opinion is wrong on the law and the facts.
Here is the problem with the opinion with respect to the law. Ala.Code 1975, § 25-5-11.1, states:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11."
(Emphasis added.) The word "solely" means just what it says. If an employer terminates an employee for one reason and one reason only, i.e., that the employee filed a workers' compensation action, then that employer has violated the statute. In this case, the question is whether Wal-Mart terminated Usrey for one particular reasonbecause he had hired an attorney to handle his workers' compensation case. The trial court correctly determined that, aside from Usrey's making a workers' compensation claim or filing an action, Wal-Mart had sufficient reason to terminate Usrey's employment.
Even when construed in a light most favorable to Usrey, the facts in this case cannot support allowing this case to go before a jury. Construing the evidence in a light most favorable to Usrey, as the nonmovant, does not mean that the movant and this Court must believe without question everything that comes out of his mouth. At best, that would be a naive view for a court or an employer to take.
While Usrey was being treated for the back injury he suffered in February 1994, Wal-Mart required him to take a drug test. He tested positive for marijuana use and was suspended for 30 days. However, he claimed not to have used marijuana since 1992. When he returned to work in November 1994, and in compliance with instructions of Usrey's doctor, Wal-Mart assigned Usrey to the light-duty position of "door greeter" instead of his old job of *75 cashier. He began the door greeter's job on November 10, 1994.
During the first week of December 1994, a female coworker complained to her supervisor that Usrey had improperly touched her and made lewd comments to her. Debra Frey, the support manager of the Anniston Wal-Mart store, where Usrey was employed, met with both the complaining employee and a witness to the incident, to discuss the matter. Frey reported the complaint to Larry Kilgore, the store manager. The main opinion states that "[a]fter Usrey returned to work, he told his supervisor that he had hired an attorney" to handle his workers' compensation claim and that "[s]hortly after this conversation, the store manager fired Usrey." 777 So.2d at 68. But it could also be said that Usrey was fired shortly after his supervisor was informed that Usrey had improperly touched another employee and made lewd comments to her.
Those joining the main opinion, expressing their own judgment, suggest that termination was too severe a discipline to impose on Usrey, considering the acts complained of. The complaining employee claimed in an affidavit that on November 29, 1994, Usrey had rubbed her back and made a "comment to the effect that he knew I was wearing a bra but he could tell I was not wearing bloomers because my butt was jiggling when I walked." A second Wal-Mart worker, who says she was present during that incident, confirmed the complaining employee's statements about Usrey's statements and actions. The complaining employee and the second worker said that Usrey's comments made them feel uncomfortable. Usrey denied making the comments, but the statements of the two witnesses directly contradicted his denial. The main opinion implies that Wal-Mart's investigation was inadequate. What more could Wal-Mart have done?
On December 14, 1994, Kilgore and the assistant store manager, Dot Miller, met with Usrey to discuss the incident. Usrey initially denied that the incident took place at all. Later, he admitted that the incident occurred but said that he "was only joking around." During the meeting, Usrey wrote the following description of the incident:
"[The two female employees] was out by the time clock. I compliment [the first employee] on her outfit, it was jumper outfit. [The two female employees] and I was both laughing of this. Nothing was never said out of the way about sexes thing or anything like that. Perhaps she or they just took it the wrong way. This is a statement from Clint C. Usrey freely on my own in front of Dot Miller and Larry Kilgore."
On that same day, Wal-Mart terminated Usrey's employment.
Wal-Mart's decision to terminate Usrey's employment may appear severe to those joining the main opinion. Why should Wal-Mart have given Usrey the benefit of the doubt over the statements of two other employees? Usrey had demonstrated a pattern for at least shading the truthas demonstrated by his statement that he had not used marijuana since 1992, his initial denial of the incident with the two female employees, and his written description of the incident. Adding to that the sexual-harassment complaint, I conclude that Wal-Mart presented sufficient evidence that it did not terminate Usrey solely for the reason that he had filed a claim for workers' compensation. At that point, Wal-Mart would have been entitled to a summary judgment on the retaliatory-discharge claim if Usrey did not rebut Wal-Mart's showing.
It was then Usrey's duty to present sufficient evidence that Wal-Mart's stated reason was not the true reason but was merely a pretext. "The plaintiff does not have to `prove' that the employer's stated reason is not [the true reason] unless the defendant's evidence is sufficiently certain, without more evidence from the plaintiff, to support a [judgment as a matter of law]." Culbreth v. Woodham Plumbing *76 Co., 599 So.2d 1120, 1122 (Ala.1992); see Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996) (quoting Culbreth). Because Wal-Mart's evidence would be sufficient to require a judgment as a matter of law, Usrey should be required to "prove" that the stated reason was not the true reason. The main opinion does not even mention this evidentiary requirement that Usrey must meet.
What evidence did Usrey offer to rebut Wal-Mart's evidence indicating that it had terminated Usrey for a legitimate reason? He filed two affidavits. One was his own, and the other was that of another former employee named Teresa Lumpkin. Usrey testified that Kilgore told him that he would be fired "on the spot" if he hired an attorney in connection with his on-the-job injury. Kilgore denied making the statement. Usrey said that Kilgore made that statement on February 24, 1994. (Usrey Deposition, p. 122.) Yet, Usrey was not at that time fired for hiring an attorney. He was not fired for another 10 months. In Usrey's deposition and in his affidavit, he denied the allegations made by the complaining female employee and contradicted the affidavit given by the second employee. He gave a totally different rendition of the facts regarding the allegation of sexual harassment. Considering Usrey's difficulties in dealing with the truth, and considering that there were two witnesses to the sexual-harassment incident, Usrey's self-serving affidavit is less than convincing. Was Wal-Mart wrong to believe two of its other employees and not Usrey? I think not. Surely, liability for wrongful termination should not be based on such a decision by an employer.
Wal-Mart has a very clear and well-published policy on sexual harassment. That policy includes the following statements:
"Any associate who harasses another associate or an applicant for employment for any reason, including but not limited to race, religion, color, national origin or ancestry, physical handicap, sex, age, medical condition or marital status will be subject to disciplinary action, including termination.

"Sexual harassment is a form of sexual discrimination. It is the express policy of the Company that sexual harassment of associates or applicants, by any associate or agent of the Company is unacceptable and will not be tolerated.
". . . .
"Any member of management who receives a report of sexual harassment must thoroughly investigate the complaint with maximum effort to maintain confidentiality and individual privacy. No retaliation will be administered against any associate who reports a claim of sexual harassment. Following the investigation of the complaint, if the complaint is determined to be valid, the offender will face immediate and appropriate disciplinary action based upon the severity of the harassment and other relevant factors. Disciplinary action may include termination."

(Emphasis added.) Usrey should have been well aware of the consequences of his actions and comments. But perhaps that awareness of the seriousness of the allegation is why he originally denied that the incident ever took place.
Wal-Mart had to act swiftly and effectively to avoid liability for sexual harassment.
"Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the work-place that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets."
Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir.1982), (quoted in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, at 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 *77 (1986)). Meritor accepted the argument that to some extent an employer's liability should be based upon principles of agency. In that case, the EEOC had argued for "a rule that asks whether a victim of sexual harassment had reasonably available an avenue of complaint regarding such harassment, and, if available and utilized, whether that procedure was reasonably responsive to the employee's complaint." It argued, "If the employer has an expressed policy against sexual harassment and has implemented a procedure specifically designed to resolve sexual harassment claims, and if the victim does not take advantage of that procedure, the employer should be shielded from liability absent actual knowledge of the sexually hostile environment...." Meritor, supra, 477 U.S. at 71, 106 S.Ct. 2399. The United States Supreme Court accepted some of the EEOC's argument as to an employer's liability, but not all of it. Nevertheless, appropriate corrective action is critical to an employer's avoiding liability. See Fleming v. Boeing Co., 120 F.3d 242 (11th Cir.1997) (employer took swift and appropriate corrective action against employee who was sexually harassing coworker, and therefore employer was not directly liable for harassment).
The main opinion also says that Usrey believes Wal-Mart had made the decision to terminate him, "before questioning him" about the complaint. 777 So.2d at 70. Even if that allegation is true, and whether it is true is questionable, it would prove nothing. Wal-Mart had sufficient cause to terminate Usrey after hearing from two witnesses about his sexually inappropriate conduct. The main opinion also states: "Even though he denied making the sexually harassing comment, Usrey was fired that same day [i.e., the same day he was questioned about the alleged harassment]...." 777 So.2d at 71. Somehow, those joining the main opinion think this statement is in Usrey's favor. However, Usrey denied making the comment, in the face of statements by two other employees indicating he had made the comment. He later changed his story and gave a very vague statement about what had happened, a statement that Wal-Mart could reasonably have construed to indicate that Usrey had made the comments complained of but thought they were innocent joking. His denial does not work in his favor. Even construed in the light most favorable to Usrey, the nonmoving party, the statements still do not help him, because they are speculative and conclusory. Perry v. Mobile County, 533 So.2d 602 (Ala.1988). They prove nothing.
According to the main opinion, Usrey's other rebuttal evidence, the Lumpkin affidavit, stated that "[Lumpkin found] any allegations of sexual harassment against Usrey to be totally inconsistent with any behavior of Usrey that she had personally observed in the numerous times she had been around him at work." 777 So.2d at 71. Usrey and Lumpkin both claimed that Wal-Mart had a pattern and practice of terminating employees who filed claims for workers' compensation. Usrey testified that every person he knows who has been injured at Wal-Mart has been terminated or has been forced to quit. He could name threeLumpkin, James Brasher, and Paylor Parrish. Of these three, only Lumpkin provided an affidavit.
The main opinion points out that Lumpkin testified "that Wal-Mart had falsified its records pertaining to workers' compensation injuries, which it presented in support of its motion for summary judgment, in regard to the reason for her termination." 777 So.2d at 71-72. Lumpkin overstated the case, however. The records Wal-Mart provided showed that Lumpkin had voluntarily terminated her employment with Wal-Mart because of family sickness. Lumpkin admitted in her affidavit that she quit voluntarily. She disagreed with the reason stated in Wal-Mart's records. She said she quit because she was mistreated after returning to work following her injury. In her affidavit, she never said that she told Wal-mart that mistreatment was the reason she was quitting. *78 In fact, she admits that she quit work voluntarily. Lumpkin gave her opinion as to why she quit work with Wal-Mart. Her testimony is irrelevant for determining whether Wal-Mart's termination of Usrey was improper. These statements by Usrey and Lumpkin are little more than unsupported allegations; they are not sufficient evidence to "prove" that Wal-Mart's stated reason was not the true reason, the requirement in such a case as this. See Culbreth, supra, at 1122.
Because of decisions such as this one issued today, employers in the situation Wal-Mart was in face a catch-22 when dealing with an employee who files a workers' compensation claimto terminate and face the costs of defending a retaliatory-discharge claim under § 25-5-11.1, Ala. Code 1975, or not to terminate, and face a possible sexual-harassment action by the complaining employee for millions of dollars. Those joining the main opinion, in a haste to ensure that this case goes before a jury, ignore certain facts presented to the trial court and mischaracterize the burden of proof applicable in retaliatory-discharge actions like this one. Therefore, I respectfully dissent.
MADDOX, Justice (dissenting).
An employee carries the burden of establishing a prima facie case of retaliatory discharge by presenting substantial evidence indicating that his or her employment was terminated solely because he or she filed a workers' compensation action against the employer. See § 25-5-11.1, Ala.Code 1975. I do not believe the employee carried this burden; I conclude that the trial judge properly entered the summary judgment for the employer.
SEE, J., concurs.
NOTES
[1] When Usrey was taken for treatment after his injury, he was given a drug test; that test showed marijuana in his system. He was placed on a 30-day drug suspension and was required to undergo counseling. In his affidavit, Usrey stated that he was on prescription medication at the time of the drug test and that, although the medication had correctly been identified on earlier drug tests, it did not show up on this test. He further stated that he had smoked marijuana in 1992 in an effort to get rid of a migraine headache, but that he had not smoked marijuana within a year before this drug test. He argued that he did not think the results the doctor reported to him were his results and that if they were they were incorrect. Nevertheless, Usrey voluntarily complied with the suspension and did not challenge the test results. Usrey passed a drug screen before returning to work after the suspension and injury.

Wal-Mart briefly noted the drug suspension in the statement of facts in its respondent's brief but did not mention it beyond that. The Chief Justice's dissenting opinion, however, uses this incident to conclude that Usrey has "demonstrated a pattern for at least shading the truth," 777 So.2d at 75, and that he has "difficulties in dealing with the truth." 777 So.2d at 76. The drug suspension is irrelevant to the issue before this Court, because no evidence has been submitted or heard on this issue and because Wal-Mart did not rely on the drug suspension as providing a permissible reason for terminating Usrey's employment. The Chief Justice's dissent has inappropriately drawn inferences against Usrey, the nonmoving party, on an issue that is not relevant to this case.
[2] Usrey testified that Kilgore made this statement on February 24, 1994. The Chief Justice's dissent takes issue with the fact that Usrey was not fired until 10 months later. 777 So.2d at 76. However, it was not until 10 months later that Usrey told his supervisor that he had hired an attorney.
[3] The Chief Justice's dissent adopts Wal-Mart's argument that "Usrey initially denied that the [sexual-harassment] incident took place at all," but that "[l]ater, he admitted that the incident occurred but said that he `was only joking around.'" 777 So.2d at 75. However, Usrey expressly denied in his deposition, in his interrogatory responses, and in his affidavit that he made the alleged comment or that he touched the coworker. He further testified that he did not even know what the alleged comment was until his attorney found out for him after filing this action. It is consistent with this denial that Usrey said "no" when Kilgore asked him if he had said anything to an associate about bloomers and bras. To say that he later admitted to it when Usrey explained that he "finally realized" that Kilgore must have been talking about a conversation he had had a few days earlier wherein he had complimented a coworker on her outfit is an inaccurate characterization of the evidence in the record, or at least a failure to draw reasonable inferences in favor of the nonmoving party.
[4] Although Usrey was required to make a written statement regarding the incident, there is no written statement or report of the complaint from either the alleged victim or the witness.
[5] I am persuaded that Wal-Mart thoroughly investigated the sexual harassment complaint. Wal-Mart obtained a statement from the alleged victim and the only other witness to the incident. Wal-Mart then confronted Usrey with this. Usrey first denied that anything had happened, but later confirmed an encounter with the victim and her witness and stated that the encounter was not sexual, but that the alleged victim and the witness may have concluded that it was: "Nothing was never said out of the way about sexes thing or anything like that. Perhaps she or they just took it the wrong way."